In the Matter of TRUSTEES OF THE MASONIC HALL AND ASYLUM FUND, Petitioner, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Respondents.

Third Department, January 23, 1992

APPEARANCES OF COUNSEL

*Bondy & Schloss (Joseph S. Rosenthal* and *Mark A. Harmon* of counsel), for petitioner.

*Robert Abrams, Attorney-General (Clifford A. Royael* and *Peter G. Crary* of counsel), for respondents.

**OPINION OF THE COURT**

CREW III, J.

Petitioner is a residential health care provider and a participant in the Medicaid program. It operates a facility which provides skilled nursing and health-related care.[1] The facility is a four-story structure with five wings on each floor. The skilled nursing portion of the facility consists of seven units totaling 210 beds. The nursing facility's direct-care employees are paid for eight-hour work days but are provided a half-hour lunch and two 15-minute breaks. In November 1982, petitioner received its 1983 Medicaid reimbursement rate which was computed by taking its 1981 allowable costs and trending them for inflation. Respondents did not include the costs of additional nursing and dietary staff hired by petitioner in 1982. After appealing its 1983 rate in a timely fashion, peti-

---

1. A skilled nursing facility provides round-the-clock nursing care. A health-related facility provides for patients who require a lower level of care. Additionally, this decision is intended to encompass and apply to *direct-care* nursing positions for the skilled nursing facility, the health-related facility and dietary staff of petitioner, although we will refer solely to employees of the skilled nursing portion of the facility.

tioner was denied a rate increase by respondent Commissioner of Health. On January 16, 1985 petitioner took a second appeal of its 1983 reimbursement rate, which was denied in October 1988.

In February 1989, petitioner commenced a CPLR article 78 proceeding challenging the Commissioner's denial of a rate increase for its 1983 reimbursement rate. In June 1989, after issue was joined, Supreme Court remitted the proceeding for resolution of two specific factual issues and development of the record. The two factual issues to be resolved were (1) whether Norman Andrzejewski, an area administrator with the Department of Health (hereinafter Department), directed the facility to hire additional nursing and dietary staff for which Medicaid reimbursement had been refused, and (2) whether Andrzejewski had the authority to direct the facility to hire the additional staff if the needs of the patients so required. In February 1990 an Administrative Law Judge (hereinafter ALJ) issued findings of fact and concluded that "[t]he evidence establishe[d] that * * * Andrzejewski did not [direct] that the [facility] hire additional staff nor did he have the authority to do so". In May 1990, the Commissioner adopted those findings of fact and conclusion and denied petitioner's request for a rate increase. In September 1990 petitioner commenced this CPLR article 78 proceeding challenging the Commissioner's determination. Supreme Court transferred the proceeding to this court pursuant to CPLR 7804 (g).

There are three issues which must be addressed. Before doing so, however, we must identify the specific matters to which this decision is intended to apply. In the papers supporting petitioner's request for a rate increase, statement of issue Nos. 4, 7 and 8 are pertinent to this proceeding. Statement of issue No. 7 relates to the first issue before this court, which is whether there is substantial evidence to support the determination that respondents did not direct the facility to hire additional staff. Statement of issue Nos. 4 and 8 relate to the second and third issues, which are whether respondents denied petitioner a rate increase based upon Department guidelines that were fixed, general principles constituting a rule or regulation required to be filed in the office of the Department of State and, if not, whether the Commissioner's application of those guidelines was arbitrary.

Turning to the first issue, the dispute between the parties centers upon what statements were made to representatives of

petitioner by Andrzejewski at a February 12, 1982 meeting. A brief recount of the events leading up to that meeting follows. In 1981 petitioner terminated a substantial number of nursing and dietary staff based upon a recommendation in a report prepared by its accounting firm. In January 1982, based upon numerous complaints received, the Department's office in Syracuse (hereinafter Blue Team) commenced a survey of petitioner's facility. As a result of its survey findings, the Blue Team was very concerned about the quality of care patients were receiving due to significant deficiencies discovered at the facility. Andrzejewski was apprised of those deficiencies and shared the concerns of the Blue Team. A meeting was scheduled for February 12, 1982 at which members of the Blue Team, Andrzejewski and members of petitioner were present. Andrzejewski, who normally does not attend such meetings, stressed upon petitioner's representatives the urgency of correcting the deficiencies found to exist at the facility. The meeting's agenda was limited to disclosing to members of petitioner the survey findings and delivering a letter requiring the facility to take corrective action within 30 days in order to prevent the imposition of fines and possible revocation of its operating license. The letter did not direct petitioner to hire additional nursing and dietary staff.

As a result of that meeting, petitioner hired additional staff to correct the cited deficiencies and thereafter sought a rate increase to defray the expenses incurred as a result thereof. It is clear from the record that there was conflicting evidence offered concerning Andrzejewski's statements at the February 12, 1982 meeting. Members of petitioner who attended that meeting stated that Andrzejewski explicitly directed the facility to hire additional staff to correct its deficiencies. Members of the Blue Team and Andrzejewski, however, stated that no such mandate was given to the facility. The ALJ specifically stated that "[c]onflicting evidence, if any, was considered and rejected in favor of the cited evidence". He determined, and the Commissioner adopted that determination, that Andrzejewski did not direct the facility to hire additional staff. Petitioner argues that the ALJ did not afford sufficient weight to the testimony given by its members at the hearing. In that regard, the ALJ's decision of which testimony to credit is largely unreviewable by this court because the duty of weighing evidence rests solely with the ALJ (see, *Matter of Berenhaus v Ward*, 70 NY2d 436, 443-444; *Matter of Pell v Board of Educ.*, 34 NY2d 222; *Henry & Warren Corp. v*

*Axelrod,* 163 AD2d 354, 355). Although a contrary decision may be reasonable and also sustainable, we may not substitute our judgment for that of the ALJ when it is supported by substantial evidence *(see, Matter of Consolidated Edison Co. v New York State Div. of Human Rights,* 77 NY2d 411, 417; *cf., Matter of Cortland-Clinton, Inc. v New York State Dept. of Health,* 59 AD2d 228, 232).[2]

Before addressing the merits of the second and third issues, we must identify the data and guidelines used, explain the formulas employed and describe the decision-making criteria implemented by the Commissioner in making the determination to deny petitioner a discretionary increase in its 1983 reimbursement rate. The Commissioner disclosed that data from the facility's 1981 "RHCF-4" cost report, 1983 and 1984 "DMS-1 snapshot" data,[3] the 1985 "RUGS II" and the Department's management assessment guidelines were used in making the determination. Respondents computed the facility's actual and allowable full-time equivalents (hereinafter FTE) or staffing levels for direct-care skilled nursing employees. The actual FTE was computed by taking the total number of hours paid said employees based upon information in the 1981 RHCF-4 cost report and dividing by 2,080, which represented 40 hours of work each week multiplied by 52 weeks in a year.[4] The allowable FTE was computed by taking the average number of hours of patient care needed each day (3.07 hours), which was obtained from the facility's DMS-1 snapshot data, and multiplying it by the number of beds in the skilled nursing section (210 beds), resulting in the total number of skilled nursing care hours needed each day. That result was divided by the total number of working hours paid direct-care skilled nursing employees each day (8 hours each day), result-

2. In view of our determination, we need not decide the question of whether Andrzejewski had the authority to direct the facility to hire additional staff if the needs of the patients so required.

3. The DMS-1 snapshot is a compilation of DMS-1s for the facility's patients during a three-month period, in this case the last quarter of 1981. The DMS-1 is an assessment tool used to evaluate a patient's need for nursing care. It is used to determine whether the care level at a skilled nursing facility was appropriate. Completion of the form, which assessed the patient's medical condition and need for nursing intervention and assistance in the activities of daily living, was required prior to admission to a facility and at least quarterly thereafter.

4. The facility's 1981 actual FTE for total direct-care skilled nursing facility employees was 147.93 and was computed by dividing 307,694, the total number of hours paid, by 2,080.

ing in the total number of direct-care skilled nursing employees needed each day. That result was multiplied by a relief factor (1.59) which took into consideration the need to provide additional employee replacements during weekends, holidays, vacations and illness, and ensures that there would be round-the-clock coverage for a full year.[5] The allowable FTE formula employed mirrors the steps contained in the Department's management assessment guidelines. In determining whether to grant or deny a rate increase, the Commissioner compared the facility's actual FTE for 1981 with the Department's allowable FTE for 1983. Where the actual was greater than the allowable FTE, a rate increase would be denied. Where the actual was less than the allowable FTE, a rate increase would be approved.[6]

■ Turning to the merits of the second issue, petitioner contends that the Commissioner denied the facility a rate increase based upon a fixed, general and rigid Department guideline, without consideration of its particular facts and circumstances, which constituted an unpublished rule in violation of NY Constitution, article IV, § 8. Generally, where the Commissioner renders a determination for case-by-case analysis of the facts, the guidelines are not required to be published as a rule or regulation (cf., *Matter of Dry Harbor Nursing Home & Health Related Facility v Axelrod,* 137 AD2d 962, 964, *lv denied* 73 NY2d 701). However, where a guideline is a fixed, general principle to be applied by the Commissioner without regard to other facts and circumstances relevant to the regulatory scheme of the statute being administered, it constitutes a rule or regulation required to be filed with the Department of State (see, *Matter of Roman Catholic Diocese v New York State Dept. of Health,* 66 NY2d 948, 951; *Matter of Sunrise Manor Nursing Home v Axelrod,* 135 AD2d 293, 296). A review of the guidelines at issue reveals that they encompass both fixed and variable factors unique to a facility to be considered by the Commissioner when determining rate appeals on a case-by-case analysis. The guidelines, therefore,

5. The Department's 1983 allowable FTE for total direct-care skilled nursing facility employees was 128.14 and was computed as follows: 3.07 multiplied by 210 divided by 8 multiplied by 1.59.

6. The facility's 1981 actual FTE for total direct-care skilled nursing facility employees was 147.93 and the Department's 1983 allowable FTE for the same employees was 128.14. The facility's actual FTE exceeded the allowable FTE by 19.79. The Commissioner therefore denied petitioner a rate increase for its 1983 reimbursement rate.

were not per se rules or regulations required to be filed with the Department of State *(see, Matter of Dry Harbor Nursing Home & Health Related Facility v Axelrod, supra)*.

▇ Finally, petitioner contends that the Commissioner acted arbitrarily in denying its application. We agree. We hasten to observe that the Commissioner was not obligated to conduct an *ab initio* full cost analysis of the facility's operation when it received petitioner's request for discretionary relief from its established prospective reimbursement rates. In responding to petitioner's request herein, however, the Commissioner chose to use the Department's guidelines to determine whether such relief was appropriate.[7] Those guidelines provided that, in addition to the formula contained therein, certain enumerated variables should be considered because they affect the number and level of personnel required by the facility. Two of the enumerated variables include the proximity of nursing units to one another and the physical configuration of the facility. It is clear from the record that petitioner requested that the structural characteristics of the facility's building be considered in that the building has four floors with five wings on each floor. Additionally, the skilled nursing portion of the facility consists of seven units. In response, respondents asserted that the configuration of the facility's building was irrelevant in rendering the determination. Given that the Department's own guidelines provide that such considerations are relevant to the Commissioner's determination, we can only conclude that the Commissioner's refusal to consider petitioner's request was arbitrary and capricious. Accordingly, the Commissioner's 1983 rate determination must be annulled and the matter remitted for further proceedings.

---

7. We also note that petitioner's request was for relief from the direct and indirect cost ceilings established by the Department. In order for petitioner to be entitled to the relief sought, it was incumbent upon it to produce comparative evidence that the costs of its facility were as efficient as other facilities in its peer group *(see, Matter of Blase v Axelrod,* 146 AD2d 867). This petitioner did not do and was, therefore, not entitled to the relief sought. The Commissioner, however, did not invoke that ground as a basis for his denial and our review is limited solely to the grounds invoked by him and we may not sanction his determination by substituting what we deem to be the appropriate basis *(see, Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.,* 77 NY2d 753, 757-758; *Matter of Consolidated Edison Co. v Public Serv. Commn.,* 63 NY2d 424, 441, *appeal dismissed* 470 US 1075).

MIKOLL, J. P., YESAWICH JR., LEVINE and CASEY, JJ., concur.

Adjudged that the determination is annulled, with costs, petition granted and matter remitted to respondents for further proceedings not inconsistent with this court's decision.