[636 NYS2d 484]

In the Matter of TERESIAN HOUSE NURSING HOME COMPANY, INC., Appellant, v MARK CHASSIN, as Commissioner of Health of the State of New York, et al., Respondents.

Third Department, January 18, 1996

## APPEARANCES OF COUNSEL

*Tobin & Dempf,* Albany *(Raul A. Tabora, Jr.,* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* Albany *(Victor Paladino* and *Peter G. Crary* of counsel), for respondents.

*O'Connell & Aronowitz,* Albany *(Cornelius D. Murray* and *Kathleen M. Treasure* of counsel), for New York State Health Facilities Association, *amicus curiae.*

## OPINION OF THE COURT

PETERS, J.

Petitioner is an owner and operator of a residential nursing home health care facility located in Albany County. It is licensed by respondent Commissioner of Health pursuant to Public Health Law article 28. This proceeding challenges the audit by the Department of Health (hereinafter DOH) of petitioner's patient review instrument (hereinafter PRI)* data used in computing petitioner's Medicaid reimbursement rate.

As part of the Medicaid reimbursement rate calculation, PRIs are completed for each patient in the facility. These PRIs place patients into 16 distinct patient categories or "resource utilization groups" (hereinafter RUG-II). The RUG-II are further categorized into five patient types or hierarchies, which, in descending order of resource utilization, are heavy rehabilitation, special care, clinically complex, severe behavioral and reduced physical functioning. Each RUG-II is assigned a numeric weight or "case mix index" (hereinafter CMI), which reflects the relative resource utilization of patients in that group. A nursing home's CMI becomes the weighted average of the CMIs of each category in the RUG-II for all of its patients at a particular time. Thus, the greater the resource utilization, the greater the associated CMI, and therefore the greater the reimbursement.

DOH is authorized to conduct audits to ensure the accuracy of the PRIs. Such audits include on-site observations and/or

---

* PRIs detail, among other things, information as to an individual's medical diagnosis and treatments, intervention necessary to accomplish activities of daily living, behavior and specialized services, and direct costs incurred for nursing administration, therapies and social services *(see,* 10 NYCRR 86-2.10 [c]).

interviews of patients and may further include a review of relevant medical records (see, 10 NYCRR 86-2.30 [e] [5]). If a discrepancy is found in the initial stage I audit between the assessment done by the facility and that of the independent auditor hired by DOH, there are further review procedures which could eventually mandate that the facility have its PRIs completed by an independent person or entity approved by DOH (10 NYCRR 86-2.30 [f] [1] [ii]), the cost of which would not be reimbursed by Medicaid (see, 10 NYCRR 86-2.30 [f] [3]).

As a result of a stage I audit conducted at petitioner's facility in February 1993, DOH informed petitioner by letter dated March 4, 1994 that "the observations of the on-site reviewer differed significantly from the data reported" and therefore determined that a stage II audit was warranted. As a result of the stage II audit encompassing a broader review of PRIs, and upon failure of a stage III audit encompassing yet a greater review of PRIs, DOH determined that there was a statistically significant difference in the data reported by petitioner from that assessed by the auditor and directed petitioner to conduct the next four assessments through an independent auditor in accordance with 10 NYCRR 86-2.30 (f) (1) (ii) and (2). The result of such audits was that the direct cost component of petitioner's reimbursement rates was recalculated. Petitioner challenged this determination through the commencement of this CPLR article 78 proceeding, which was dismissed by the Supreme Court. Petitioner appeals.

Pursuant to the applicable regulations, a facility is deemed to have failed to perform an accurate case mix assessment if the inaccuracies in their assessment result in a "statistically significant" modification of the facility's reimbursement rate (10 NYCRR 86-2.30 [f] [2]). DOH had notified petitioner that the criteria it was using to determine whether petitioner was performing its CMI function accurately were as follows: "(1) Audited data, when replacing reported data, resulted in a change in RUG-II group for greater than 25% of the patients audited, OR (2) Audited data, when replacing reported data, resulted in a [CMI] change of .05 or greater for the patients audited." Petitioner contends that the use of these criteria to determine whether the differences between its assessment and that of DOH were "statistically significant" constituted the application of an unpromulgated rule in violation of NY Constitution, article IV, § 8 (see, State Administrative Procedure Act § 202).

It is well settled that "only a fixed, general principle to be applied by an administrative agency without regard to other

facts and circumstances relevant to the regulatory scheme * * * constitutes a rule or regulation required by NY Constitution, article IV, § 8 to be filed in the office of the Department of State" (*Matter of Roman Catholic Diocese v New York State Dept. of Health*, 66 NY2d 948, 951; *see, Matter of Cordero v Corbisiero*, 80 NY2d 771, 772-773). Should the agency, however, "render[ ] its determination on a case-by-case analysis of the facts, the guidelines are not required to be published as a rule or regulation" (*Matter of New York City Tr. Auth. v New York State Dept. of Labor*, 211 AD2d 432, 433, *lv granted* 86 NY2d 705; *see, Matter of Trustees of Masonic Hall & Asylum Fund v Axelrod*, 174 AD2d 199, 204-205).

■ Our review of the record, including the guidelines at issue, reveals that the criteria utilized by DOH to evaluate whether petitioner performed an accurate case mix assessment indicates full compliance with standards typically utilized in statistical analysis to determine whether a difference in results should be deemed significant (*see*, IV [A] Handbook of Applicable Mathematics, Statistics, at 220 [1984]; VNR Concise Encyclopedia of Mathematics 603 [2d ed 1975]; *see generally, Carroll v Ortiz*, 122 Misc 2d 164, 175). Since the criteria used by DOH to evaluate whether the difference in results were statistically significant was coupled with an individualized review of criteria that were factually specific to a particular patient, we conclude, as did Supreme Court, that the audit involved a consideration of both fixed and variable factors and thus did not have to be promulgated as a rule (*see, Matter of Trustees of Masonic Hall & Asylum Fund v Axelrod, supra*, at 204-205).

■ Addressing petitioner's next contention that DOH acted arbitrarily and capriciously by using a restrictive application of PRI assessment standards, we find it to be without merit. In accordance with the controlling regulations, PRIs are assessed upon specific "qualifiers" (*see*, 10 NYCRR 86-2.30 [i], Instructions, Patient Review Instrument [PRI], General Concepts [5]). Petitioners contend that by the terms of these qualifiers, DOH is requiring that patients receive at least 28 days of specific treatment as a prerequisite for classification in the "heavy rehabilitation" category. Our review of the relevant regulations and controlling qualifiers reveals that the four-week time period detailed therein merely specifies that the facility must look to the four-week period prior to the date of the assessment to evaluate the type and range of the treatment rendered for each patient. Accordingly, we find no evidence that DOH improperly reclassified any patient.

As envisioned by the proponents of this system, reimbursement rates will neutralize over time since some patients' care needs will decrease during the six months before the next PRI assessment and the payment will remain at the higher level whereas other patients' care needs will increase during such period but the payment rate will remain the same. This system implemented by the regulations under review, as well as by DOH's interpretation thereof, provides a rational approach to the reimbursement system by providing an incentive for facilities to improve their patients' functioning (*see, Matter of North Shore Univ. Hosp. v Axelrod*, 204 AD2d 894, *lv denied* 84 NY2d 805).

■ As to the manner in which DOH had conducted its audit, again we find no error. Due to the limited amount of available Medicaid funds and DOH's responsibility to ensure that reimbursement is made only for those costs incurred by efficiently and economically operated facilities (*see,* Public Health Law § 2807 [3]; *Matter of High Point Hosp. v Surles*, 218 AD2d 874), we find that DOH has rationally determined that due to the highest expenditures being made in the more intensive rehabilitation groups, such group would be the proper place to utilize its resources and focus its audit inquiry. As to any further claims raised with respect to respondent's sampling approach, we find such issues unpreserved for review.

Finally, addressing petitioner's contention that it was not afforded "an on-site conference" prior to the conclusion of the audit (10 NYCRR 86-2.30 [e] [5]), we note that the record reflects that petitioner was notified that such conference was available and that in the one instance it so requested it, petitioner concedes that it was provided. As to any claim regarding its lack of formality, we dismiss such contention as without merit since the regulations do not mandate that the conference be conducted in a contrary manner (*see,* 10 NYCRR 86-2.30 [e] [5]).

Finding the remaining claims to be either unpreserved for review or lacking in merit, we affirm Supreme Court's judgment in its entirety.

CARDONA, P. J., MERCURE and WHITE, JJ., concur.

Ordered that the judgment is affirmed, without costs.