■ In the Matter of ISABELLA GERIATRIC CENTER, INC., et al., Appellants, v ANTONIA NOVELLO, as Commissioner of the New York State Department of Health, et al., Respondents. [833 NYS2d 5]—

Judgment, Supreme Court, New York County (Eileen Bransten, J.), entered on or about December 30, 2005, which denied the petition to annul the respondents' revision of an aspect of the Medicaid reimbursement rate methodology for nursing homes, and dismissed this proceeding, unanimously affirmed, without costs.

As respondents concede, there is no administrative remedy for challenging the rate-setting methodology of the Department of Health (DOH). Accordingly, the court erred in dismissing the petition on the ground of failure to exhaust administrative remedies. However, the judgment is fully supported by the court's alternate ruling on the merits, and is thus affirmed.

In 2004, DOH notified petitioners and others that in calculating 2005 Medicaid reimbursements, it would use a traceback percentage based on two-year-old data rather than the 1983 data it had used for the past 19 years. Petitioners contended, inter alia, that such action was in violation of DOH's own rules and regulations, and was arbitrary and capricious. They failed, however, to meet their heavy burden of demonstrating that DOH's rate-setting methodology was unreasonable and unsupported by any evidence (*see Matter of Nazareth Home of the Franciscan Sisters v Novello*, 7 NY3d 538, 544 [2006]).

Contrary to petitioners' assertion, DOH's regulations do not require it to set the traceback percentage based on 1983 data. While the regulations provide that the reimbursement rate for the "operational" component shall "be computed on the basis of allowable fiscal and statistical data" from 1983 (10 NYCRR 86-2.10 [b] [1] [i]), they create an exception for the "capital" component rate. That component is based on the "allowable capital costs . . . in the base year determined applicable by the department" (§ 86-2.10 [g]). While traceback percentages are not specifically mentioned in either provision, it was entirely reasonable for DOH to compute them under subdivision (g) as part of the "allowable capital costs" given that the traceback percentage determines how much the facility's total capital costs should be attributed to residential health care. DOH's interpretation of its own regulations is entitled to a high degree of judicial deference, and simply because the regulation could be interpreted another way, as suggested by petitioners, does not make DOH's interpretation irrational (*see Matter of Blossom View Nursing Home v Novello*, 4 NY3d 581, 595 [2005]).

Furthermore, just because DOH chose to use the 1983 data for traceback percentages for the past 19 years does not mean it was required by its regulations to do so. So long as an agency explains why it is doing so, it may adopt a new interpretation of a regulation (*see Matter of Lantry v State of New York*, 6 NY3d 49 [2005]). Here, DOH explained in 2004 that it would begin using two-year-old data rather than 1983 data because nursing homes increasingly were offering services other than residential health care, and continuing to use 1983 data would allow double reimbursement for capital costs. Until learning the results of

the Attorney General's audits in 2003, DOH had not been aware of the magnitude of the problem. Therefore, DOH's decision to apply the more recent data was rationally based on the recently discovered loophole that allowed nursing homes to recover twice from Medicaid for the same capital costs.

DOH's change in methodology for computing the traceback percentage that apportions capital costs to residential health care services was a reasonable interpretation of existing regulations. Accordingly, it was an interpretative statement that did not require formal rulemaking under the State Administrative Procedure Act.

We have considered petitioners' remaining contentions and find them without merit. Concur—Andrias, J.P., Marlow, Nardelli and Sweeny, JJ.