Matter of Wayne Ctr. for Nursing & Rehabilitation, LLC v Zucker (2021 NY Slip Op 04999)





Matter of Wayne Ctr. for Nursing & Rehabilitation, LLC v Zucker


2021 NY Slip Op 04999


Decided on September 16, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:September 16, 2021

531459 531621
[*1]In the Matter of Wayne Center for Nursing and Rehabilitation, LLC, et al., Appellants,
v
Howard A. Zucker, as Commissioner of Health, et al., Respondents. (Proceeding No. 1.)
In the Matter of Richmond Center for Rehabilitation and Specialty Healthcare et al., Appellants,
v
Howard A. Zucker, as Commissioner of Health, et al., Respondents. (Proceeding No. 2.)

Calendar Date:August 18, 2021

Before:Garry, P.J., Egan Jr., Lynch and Pritzker, JJ.

Garfunkel Wild, PC, Great Neck (Jason Hsi of counsel), for appellants in proceeding No. 1.
Hinman Straub PC, Albany (David B. Morgen of counsel), for appellants in proceeding No. 2.
Letitia James, Attorney General, Albany (Kathleen M. Treasure of counsel), for respondents.



Garry, P.J.
Appeals from two judgments of the Supreme Court (McGrath, J.), entered May 12, 2020 and June 17, 2020 in Albany County, which, in two combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, granted respondents' motions for summary judgment dismissing the amended petition/ complaint in proceeding No. 1 and the petition/complaint in proceeding No. 2.
Petitioners in these two proceedings are specialty residential health care facilities that are licensed by respondent Department of Health (hereinafter DOH) and provide specialized care and treatment for certain types of patients. These appeals involve challenges to petitioners' 2018 and 2019 per diem Medicaid reimbursement rates as established by DOH and respondent Commissioner of Health (see Public Health Law §§ 2807 [3]; 2808 [3]). After petitioners commenced these two combined proceedings pursuant to CPLR article 78 and actions for declaratory judgment, respondents answered and moved for summary judgment on the declaratory judgment claims. Supreme Court, among other things, addressed the merits, granted respondents' motions for summary judgment and dismissed the amended petition/
complaint in proceeding No. 1 and the petition/complaint in proceeding No. 2. Petitioners appeal.
First, we will address some threshold issues.[FN1] Petitioners argue that the doctrines of collateral estoppel and stare decisis bar respondents from litigating or prevailing in these proceedings. "Collateral estoppel is a flexible doctrine that precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity" (Matter of Anonymous v New York State Justice Ctr. for the Protection of People with Special Needs, 167 AD3d 113, 116 [2018] [internal quotation marks and citations omitted]; accord Matter of Ingber, 189 AD3d 1933, 1936 [2020]). "To establish collateral estoppel, it must be shown that a decisive issue in the current action [or proceeding] is identical to an issue resolved in a prior action [or proceeding], and that there was a full and fair opportunity to litigate that issue in the prior [action or] proceeding" (Wen Mei Lu v Wen Ying Gamba, 158 AD3d 1032, 1035 [2018] [citations omitted]).
Contrary to petitioners' assertion that respondents are bound by the Department of Social Services' 1996 administrative decision in Matter of Ramapo Manor Nursing Home (NY Dept of Social Servs Admin Directive FH No. 2239398Y [Dec. 31, 1996]), even assuming that respondents were found to be in privity with that agency,[FN2] it does not appear that they had a full and fair opportunity to litigate (but see Kateri Residence v Novello, 95 AD3d 619, 620 [2012] [finding that DOH was collaterally estopped from relitigating by this same administrative decision], lv dismissed 20 NY3d 1031 [2013]). Specifically, when the Department of Social Services was unsuccessful on the administrative appeal, there was [*2]no opportunity for that agency to challenge the decision of one of its own administrative law judges — who was acting as an extension of that agency's commissioner — through a CPLR article 78 proceeding (compare Matter of Beaudoin v Toia, 45 NY2d 343, 349 [1978]). Thus, no court would be able to address the interpretation of the applicable statutes and regulations, despite the courts being the most appropriate forum for such interpretation, thereby preventing a full and fair opportunity to litigate.
Petitioners further rely upon two First Department decisions in which respondents defended against similar rate reimbursement challenges (Matter of Bronx-Lebanon Highbridge Woodycrest Ctr. v Daines, 147 AD3d 442, 442-443 [2017]; Kateri Residence v Novello, 95 AD3d at 619-620). Notably, however, "the doctrine of collateral estoppel does not apply to bar relitigation of a pure question of law" (CitiMortgage, Inc. v Ramirez, 192 AD3d 70, 72 [2020] [internal quotation marks and citation omitted]; see American Home Assur. Co. v International Ins. Co., 90 NY2d 433, 440 [1997]). Thus, and particularly considering that collateral estoppel is a flexible doctrine, we do not find that Supreme Court erred in declining to apply that doctrine to bar respondents from litigating in the current proceedings.
"Stare decisis is the doctrine which holds that common-law decisions should stand as precedents for guidance in cases arising in the future and that a rule of law[,] once decided by a court, will generally be followed in subsequent cases presenting the same legal problem" (Matter of State Farm Mut. Auto. Ins. Co. v Fitzgerald, 25 NY3d 799, 819 [2015] [internal quotation marks and citations omitted]). Although trial courts are "bound by the doctrine of stare decisis to apply precedent established in another Department, [if] no relevant precedent [is] available from this Court or the Court of Appeals[,] . . . this Court is not so bound; while we should accept the decisions of a sister [D]epartment as persuasive, we are free to reach a contrary result if we disagree with such [C]ourt's legal analysis" (Shoback v Broome Obstetrics & Gynecology, P.C., 184 AD3d 1000, 1001 [2020] [internal quotation marks, citations and brackets omitted]). Therefore, we need not address the issue of whether Supreme Court was bound and constrained by the prior First Department decisions; we will instead consider that persuasive authority in rendering a determination upon the merits.
Turning to the merits, the calculation for basic Medicaid reimbursement rates is set forth in 10 NYCRR 86-2.10, where the rate is defined as "the aggregate governmental payment to facilities per patient day as defined in [10 NYCRR] 86-2.8, for the care of Medicaid payments which include a direct, indirect, noncomparable[, i.e., operating cost or non-capital components,] and capital component" (10 NYCRR 86-2.10 [a] [6]; see 10 NYCRR 86-2.10 [a] [7]). "A patient day is the unit of measure denoting lodging [*3]provided and services rendered to one patient between the census-taking hour on two successive days" (10 NYCRR 86-2.8 [a]). In essence, a facility's overall costs (operating cost and capital components) for a specified year (known as the base year) may be divided by that facility's total number of patient days in that base year to find a per-patient, per-day Medicaid rate known as the per diem rate (see e.g. 10 NYCRR
86-2.10 [c] [4] [iv]; see also Good Samaritan Hosp. Med. Ctr. Inc. v New York State Dept. of Health, 45 Misc 3d 844, 848 [Sup Ct, Suffolk County 2014]).
Also relevant to reimbursement calculations are "reserved bed patient days" (hereinafter RBDs). As defined by regulation, RBDs constitute a "unit of measure denoting an overnight stay away from the residential health care facility for which the patient, or patient's third-party payor, provides per diem reimbursement when the patient's absence is due to hospitalization or therapeutic leave" (10 NYCRR 86-2.8 [d]; see 18 NYCRR 505.9 [d] [1]). The concept of RBDs was created to protect a patient's right to return to the room or facility that he or she called home prior to a hospitalization or other therapeutic leave of absence. Facilities receive payments for eligible RBDs for therapeutic leaves of absence at 95% of the Medicaid rate otherwise payable to the facility for services provided on behalf of the patient (see Public Health Law § 2808 [25] [b] [i]; 18 NYCRR 505.9 [d] [2]), and payment for RBDs for a patient cannot exceed 10 days in any 12-month period (see Public Health Law § 2808 [25] [b] [ii]). The regulation states that RBDs "shall be computed separately from patient days" (10 NYCRR 86-2.8 [d]).
In 2006, the Legislature amended Public Health Law § 2808 to include the "rebasing law," which updated the base year for calculating the operating cost component to account for inflation; the new rates took effect on January 1, 2009 (see Public Health Law § 2808 [2-b]; Matter of North Gate Health Care Facility, LLC v Zucker, 174 AD3d 1201, 1202 [2019], lv denied 35 NY3d 903 [2020]; L 2006, ch 109, § 1, part C, § 47). In 2012, in a change referred to as "statewide pricing," the base year was updated again, and a new reimbursement methodology was authorized for calculating the operating cost component of non-specialty nursing home rates (see Public Health Law § 2808 [2-c]; 10 NYCRR 86-2.40 [eff. Jan. 1, 2012]). The Legislature exempted specialty facilities from the statewide pricing and directed that their rates must reflect January 1, 2009 rates, adjusted for inflation (see Public Health Law § 2808 [2-c] [c]); DOH regulations included such exemption for specialty facilities (see 10 NYCRR 86-2.40 [ad] [eff. Jan. 1, 2012]). Although DOH amended the regulation to specifically state that, "[f]or rate computation purposes, 'patient days' shall include '[RBDs]'" (10 NYCRR 86-2.40 [ac] [2] [eff. Jan. 1, 2012]), that portion of the regulation did not apply to specialty facilities (see [*4]10 NYCRR 86-2.40 [a] [eff. Jan. 1, 2012]). In May 2019, DOH amended that regulation again to specify that 10 NYCRR 86-2.40 (ac) (2) — which included RBDs in the total patient days — also applied to specialty facilities (hereinafter the 2019 amendment) (see 10 NYCRR 86-2.40 [a] [eff. Jan. 1, 2019]).
Petitioners contend that their per diem rates for 2018 and 2019 were miscalculated because the "total patient days" figure included RBDs as well as typical patient days. We note that respondents' rate-setting actions are "quasi-legislative in nature," and "DOH is entitled to a high degree of judicial deference, especially when acting in the area of its particular expertise," such that "petitioners bear the heavy burden of showing that DOH's rate-setting methodology is unreasonable and unsupported by any evidence" (Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 544 [2006] [internal quotation marks, ellipsis, brackets and citation omitted]; see Matter of Isabella Geriatric Ctr., Inc., v Novello, 38 AD3d 356, 357 [2007], lv denied 9 NY3d 806 [2007]). "[A]n agency's interpretation of its own regulation generally is entitled to deference, [though] courts are not required to embrace a regulatory construction that conflicts with the plain meaning of the promulgated language" (Matter of Visiting Nurse Serv. of N.Y. Home Care v New York State Dept. of Health, 5 NY3d 499, 506 [2005]). "Judicial deference to an agency's interpretation of its rules and regulations is warranted because, having authored the promulgated text and exercised its legislatively delegated authority in interpreting it, the agency is best positioned to accurately describe the intent and construction of its chosen language" (Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 174 [2019] [citation omitted]).
In Kateri Residence v Novello (95 AD3d at 619-620), the First Department held that DOH's "inclusion of [RBDs] in the total of patient days when calculating . . . nursing facilities' base per diem Medicaid reimbursement rate[] is irrational, unreasonable and contrary to the plain language of 10 NYCRR 86-2.8 — the controlling regulation. Indeed, the regulation makes clear that 'patient days' and [RBDs] are mutually exclusive, are to be calculated separately, and bear no relation to each other" (citations omitted). The First Department relied upon that decision and its reasoning to reach the same conclusion in Matter of Bronx-Lebanon Highbridge Woodycrest Ctr. v Daines (147 AD3d at 442-443).
The regulations at issue are not a model of clarity. Different subdivisions of 10 NYCRR 86-2.8 — deemed the controlling regulation by the First Department — offer definitions of patient day and RBDs that appear to make them mutually exclusive. Patient day denotes "lodging provided and services rendered to one patient" in the facility during one day (10 NYCRR 86-2.8 [a]), whereas RBDs denote a patient's overnight stay away from the facility (10 NYCRR 86-2.8 [d]). Under [*5]these definitions, a patient day cannot include a patient's day away from the facility. The separate nature of these terms is bolstered by subdivision (c), which provides that "[f]or reimbursement purposes residential health care facility days shall be determined by using the higher of the minimum utilization factor of 90 percent of certified beds or the actual patient days of care as furnished by the facility" (10 NYCRR 86-2.8 [c]). That focus on actual patient days of care would seem to exclude RBDs. The regulation also explicitly states that RBDs "shall be computed separately from patient days" (10 NYCRR 86-2.8 [d]).
However, other regulations also address per diem rates for Medicaid reimbursement. The regulation entitled "[c]omputation of basic rate" defines rate as "the aggregate governmental payment to facilities per patient day as defined in [10 NYCRR] 86-2.8" (10 NYCRR 86-2.10 [a] [6]). Respondents note that this definition refers to the entire section 86-2.8, not merely to subdivision (a) that defines patient day. Also included in section 86-2.8 is subdivision (d), which defines RBDs. The "aggregate governmental payment" pursuant to 10 NYCRR 86-2.8 would appear to include patient days and RBDs, each of which are reimbursed by the government for Medicaid patients. It is not unreasonable for respondents to consider RBDs (i.e., reserved bed patient days) to be a subset of total patient days. Although facilities may not be providing all services for a patient while the patient is away from the facility for hospitalization or therapeutic purposes, the facility must still provide certain administrative services or keep them ready even if the patient is not present. That is presumably part of the reason why the government reimburses facilities for RBDs related to therapeutic absences at 95% of the Medicaid rate otherwise payable to the facility for services provided on behalf of the patient (see Public Health Law § 2808 [25] [b] [i]; 18 NYCRR 505.9 [d] [2]).
Moreover, DOH will only pay facilities for RBDs when the facility or specialty part thereof to which the patient will return has a vacancy rate of no more than five percent (see 18 NYCRR 505.9 [d] [5] [i] [b]). "When computing vacancy rates, an institution must disregard beds that have been reserved for other patients/residents" (18 NYCRR 505.9 [d] [5] [i] [b]). As this regulation considers reserved beds occupied and not vacant, and the facility is reimbursed at 95% of its per diem rate for RBDs, it is not irrational to treat RBDs as part of the total patient days when calculating per diem rates. Rather, petitioners' interpretation of the regulations would "provide petitioners with a continuing financial windfall because petitioners will be compensated in two distinctly different ways for reserving beds for absent patients: [p]etitioners will be fully reimbursed for [RBDs] and petitioners will also receive a higher Medicaid per diem rate" (Good Samaritan Hosp. Med. Ctr. Inc. [*6]v New York State Dept. of Health, 45 Misc 3d at 850). On the other hand, respondents' interpretation fulfills the general intent of the Legislature to rein in Medicaid costs and preserve the public fisc (see id. at 846-848, 852; see e.g. Public Health Law § 2807 [3]). "Thus, the most efficient, fair and reasonable manner in which to allocate highly limited governmental resources in the instant situation is to continue to pay petitioners for reserving beds for absent patients, but refraining from paying petitioners a higher Medicaid per diem rate. This solution allows for the most optimally efficient use of vital governmental resources" (Good Samaritan Hosp. Med. Ctr. Inc. v New York State Dept. of Health, 45 Misc 3d at 851).
As for the requirement that RBDs "shall be computed separately from patient days" (10 NYCRR 86-2.8 [d]), respondents assert that such separate computation is for statistical, reporting or record-keeping purposes. In support of this assertion, and their contention that including RBDs as part of total patient days is a long-standing practice for DOH, they submitted statistical data report forms from various years between 1976 and 2011.[FN3] Each of those forms required the facilities to list RBDs separately, but also directed that RBDs should be included on the lines for "[n]umber of days of care provided during the period" and total patient days. "When an agency adopts a construction which is then followed for a long period of time, such interpretation is entitled to great weight and may not be ignored" (Andryeyeva v New York Health Care, Inc., 33 NY3d at 174-175 [internal quotation marks and citation omitted]). Similarly, if "the law at issue is susceptible to different interpretations, [DOH's] past practice is given great weight in determining the law's meaning" (Matter of Avenue Nursing Home & Rehabilitation Ctr. v Shah, 112 AD3d 1178, 1183 [2013]). Aside from the desire to keep track — for statistical or planning purposes — of how many RBD payments respondents make, another possible reason for the need to separately list RBDs could be that payment for RBDs per patient per facility cannot exceed a certain amount (see Public Health Law § 2808 [25] [b] [ii]).
Petitioners argue that the 2019 amendment — which explicitly stated that the portion of the regulation requiring facilities to include RBDs in their total patient days also applied to specialty facilities (see 10 NYCRR 86-2.40 [a] [eff. Jan. 1, 2019]) — proves that respondents did not previously believe that this rule applied to specialty facilities. Put another way, petitioners assert that no amendment would have been necessary if the regulation already applied. Although the 2019 amendment may constitute some evidence of the agency's prior beliefs, this argument fails as there are also other possibilities. Another reasonable explanation is that respondents always believed that specialty facilities were required to include RBDs in their total patient days when [*7]calculating per diem rates, but may have overlooked the imprecise language of the regulation. Indeed, the regulation addressing statewide pricing mentions specialty facilities in its first subdivision and states that they are not subject to the remainder of the regulation, with one exception (expanded to a second exception in the 2019 amendment); in a complicated regulation containing 31 subdivisions, many with numerous subparts, such an oversight would be understandable, especially if respondents had, in practice, been applying that subdivision to specialty facilities for decades, as they now aver. In short, the 2019 amendment was just as likely to represent a correction or clarification made in response to legal challenges as to represent a change in respondents' position or the law. Thus, DOH's 2018 and 2019 application to petitioners of its long-standing understanding of the formula to calculate per diem rates for specialty facilities does not constitute a retroactive application of new law.
Considering the specialty facilities Medicaid reimbursement statute and regulations together, and giving deference to DOH's interpretation of its own regulations in an area of its expertise, we conclude that respondents' interpretation at issue and their setting of petitioners' rates are not irrational, arbitrary, capricious or contrary to law (see Matter of Reconstruction Home & Health Care Ctr., Inc. v Daines, 65 AD3d 786, 787-788 [2009], lv denied 14 NY3d 706 [2010]; Matter of New Franklin Ctr. for Rehabilitation & Nursing v Novello, 64 AD3d 1132, 1136 [2009], lvs denied 13 NY3d 715, 716 [2010]; Good Samaritan Hosp. Med. Ctr. Inc. v New York State Dept. of Health, 45 Misc 3d at 856-857). Under that interpretation, RBDs must be included in the total patient days when calculating Medicaid base per diem reimbursement rates for specialty facilities. We therefore disagree with the First Department's conclusion that the interpretation by DOH was irrational and that patient days and RBDs "are mutually exclusive . . . and bear no relation to each other" (Kateri Residence v Novello, 95 AD3d at 619-620; see Matter of Bronx-Lebanon Highbridge Woodycrest Ctr. v Daines, 147 AD3d at 442-443). Accordingly, we affirm Supreme Court's dismissal of the petitions/complaints in both proceedings.
Egan Jr., Lynch and Pritzker, JJ., concur.
ORDERED that the judgments are affirmed, without costs.



Footnotes

Footnote 1: Respondents raise an alternative ground for affirmance — that 12 petitioners released their claims as part of a universal settlement agreement. Because respondents failed to submit a copy of the settlement agreement that was signed by any of the petitioners, we agree with Supreme Court that respondents failed to meet their burden of proving as a matter of law their entitlement to dismissal based on this defense.

Footnote 2: The Department of Social Services previously had responsibility for conducting Medicaid audits for the state, before that authority was transferred back to DOH (see L 1997, ch 436, part B, § 122 [a], [e]).

Footnote 3: In Good Samaritan Hosp. Med. Ctr. Inc. v New York State Dept. of Health (45 Misc 3d at 852-854), the court noted that DOH submitted similar forms in that case.