Matter of Williams v New York State Dept. of Corr. & Community Supervision (2022 NY Slip Op 07280)

Matter of Williams v New York State Dept. of Corr. & Community Supervision

2022 NY Slip Op 07280

Decided on December 22, 2022

Appellate Division, Third Department

Pritzker, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 22, 2022

534257

[*1]In the Matter of Michael Williams, Appellant,
v
New York State Department of Corrections and Community Supervision, Respondent.

Calendar Date:November 18, 2022

Before: Egan Jr. J.P., Clark, Pritzker, Ceresia and Fisher, JJ.

Lippes Mathias LLP, Albany (Ashley M. Emery of counsel), for appellant.
Letitia James, Attorney General, Albany (Beezly J. Kiernan of counsel), for respondent.

Pritzker, J.
Appeal from a judgment of the Supreme Court (James H. Ferreira, J.), entered October 22, 2021 in Albany County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, review (1) a determination of respondent denying petitioner's application for reinstatement as a correction officer, and (2) a determination by respondent partially denying petitioner's Freedom of Information Law request.
Petitioner was formerly employed by respondent as a correction officer. While restraining an incarcerated individual, one of petitioner's fingers was fractured and, after remaining on occupational disability leave for more than two years, he was terminated as a matter of law (see Civil Service Law § 71; 4 NYCRR 5.9 [c] [1]). Pursuant to Civil Service Law § 71, within one year from the time of his termination, he applied for reinstatement to his former position and was certified medically fit to return to duty after a physical exam. Petitioner then signed a consent and release form agreeing to undergo psychological screening as part of the selection process for the correction officer position with respondent and waiving his right to the results of that screening or the data from which the results were derived. This screening found him poorly suited to work as a correction officer and he was disqualified from reinstatement. Petitioner administratively appealed his disqualification to respondent's independent advisory board (hereinafter IAB) and submitted the opinion of a psychologist that petitioner was a suitable candidate for employment as a correction officer. The IAB recommended petitioner's continued psychological disqualification. Petitioner then requested copies of his psychological report as well as the information and records the IAB relied on in making its decision, but was informed that respondent's policy prohibited the release of these records. Petitioner's counsel renewed this request, and respondent treated it as a request for records pursuant to the Freedom of Information Law (see Public Officers Law art 6 [hereinafter FOIL]). Petitioner disputed the characterization of his request as a FOIL request; however, respondent disclosed only the IAB's decision and the letters respondent sent to petitioner informing him of his disqualification. All other requested records were withheld pursuant to the FOIL exemptions for inter- or intra-agency material and trade secrets.
Petitioner filed a complaint, which respondent moved pre-answer to dismiss. Petitioner then filed an amended complaint seeking, among other things, a declaration that the consent and release form violated his right to due process and was an unpromulgated rule in violation of Executive Law § 102 and to annul the psychological disqualification. Supreme Court denied respondent's motion to dismiss and converted the amended complaint into a combined CPLR article 78 proceeding and action for declaratory [*2]judgment. Respondent answered and thereafter moved for summary judgment. Supreme Court granted respondent's motion, dismissing the petition/complaint finding, among other things, that petitioner's due process rights were not violated. Petitioner appeals.
"In a CPLR article 78 proceeding to review a determination of an administrative agency, the standard of judicial review is whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion" (Matter of Wilson v New York City Dept. of Hous. Preserv. & Dev., 145 AD3d 905, 907 [2d Dept 2016] [citations omitted]; see CPLR 7803 [3]). On appeal, petitioner argues that respondent violated Civil Service Law § 71 by improperly using the protocol and procedures set forth in Correction Law § 8 to not only substantively review and deny his application for reinstatement, but also to limit his due process rights to challenge the adverse findings on appeal. Thus, to determine this appeal we must analyze the interplay between Correction Law § 8 and Civil Service Law § 71, as well as 4 NYCRR 5.9, relative to petitioner's right to reinstatement. To that end, Civil Service Law § 71 provides, as pertinent here, that an employee who "has been separated from the service by reason of a disability resulting from an assault sustained in the course of his or her employment . . . may, within one year after the termination of such disability, make application to the civil service department or municipal commission having jurisdiction over the position last held by such employee for a medical examination." The statute further directs that "[i]f, upon such medical examination, such medical officer shall certify that such person is physically and mentally fit to perform the duties of his or her former position, he or she shall be reinstated" (Civil Service Law § 71).
The appeals process under this statute is set out in 4 NYCRR 5.9 (e) (3), which states that an employee applying for reinstatement under Civil Service Law § 71 who has been "medically examined . . . and certified not to be fit to perform the duties of the former position, may apply in writing for a hearing, to the President of the Civil Service Commission." It further provides that "[t]he hearing shall be held before a hearing officer who . . . shall be appointed and shall conduct the proceedings in accord with article 3 of the State Administrative Procedure Act," that "[t]he applicant may be represented or assisted by an attorney or by a representative of the labor organization" and that "[t]he hearing officer shall receive documents and testimony as well as written and oral argument on the issues of the medical condition of the applicant, the duties of the position, and the ability of the applicant to perform those duties." Notably, State Administrative Procedure Act § 306 (2) requires that "[a]ll evidence, including records and documents in possession of the agency of [*3]which it desires to avail itself, shall be offered and made part of the record." State Administrative Procedure Act § 306 (3) provides the right of cross-examination.
Correction Law § 8 applies to "[a]ny applicant for employment with [respondent] as a correction officer at a facility of [respondent]," and provides that respondent "is hereby authorized to conduct, or to enter into agreements necessary for conducting tests for psychological screening of applicants covered by this section. Any such tests shall consist of at least three independent psychological instruments and shall meet the level of the art for psychological instruments to be used in a validation study developed for selection of such applicants" (Correction Law § 8 [1], [2]). This statute further provides that "[p]ersons who have been determined by a psychologist licensed under the laws of this state as suffering from psychotic disorders, serious character disorders, or other disorders which could hinder performance on the job may be deemed ineligible for appointment" (Correction Law § 8 [2]). Correction Law § 8 (3) sets forth the appeals process and provides that an applicant for employment as a correction officer "who [has] been deemed ineligible for appointment through psychological screening . . . may apply . . . for a review of the findings," after which the matter shall be referred "to an independent advisory board to review any recommendation."
As is clear from the statute, Correction Law § 8 has a substantive component directed at the psychological assessment instrument protocols and a separate review procedure relating to appellate rights. Inasmuch as Civil Service Law § 71 requires a certification of both physical and mental fitness before reinstatement, we find it permissible for respondent to utilize the kind of testing and reporting set forth in Correction Law § 8 as part of the Civil Service Law § 71 medical review required for reinstatement (see Matter of Coleman v State of New York, 38 AD3d 1044, 1046 [3d Dept 2007]). Notwithstanding this determination, we do not agree that the limited review procedures established in Correction Law § 8 can lawfully be used to side-step and effectively eviscerate the robust protections set forth in 4 NYCRR 5.9 (e) (3), which directly apply to those seeking reinstatement under Civil Service Law § 71 (see Matter of Allen v Howe, 84 NY2d 665, 672 [1994]; compare Matter of Coleman v State of New York, 38 AD3d at 1046).[FN1] Nevertheless, although both statutes have different purposes — Correction Law § 8 is designed to eliminate applicants "who exhibit psychological disorders that would indicate their unsuitability for the job" (Budget Report on Bills, Bill Jacket, L 1983, ch 887 at 9), whereas Civil Service Law § 71 was enacted for the "protection of an employee separated from the service by reason of a disability resulting from occupational injury or disease" (Mem of the State Civil Serv Dept, Bill Jacket, L 1958, ch 790 at 22) — both purposes [*4]can be achieved, and the statutes harmonized by permitting the use of Correction Law § 8 testing while preserving the review procedure set forth in 4 NYCRR 5.9 relative to employees falling within Civil Service Law § 71 (see Yatauro v Mangano, 17 NY3d 420, 427 [2011]; Matter of Dutchess County Dept. of Social Servs. v Day, 96 NY2d 149, 153 [2001]). Notably, despite the use of Correction Law § 8 testing, this matter remains distinctly a Civil Service Law § 71 reinstatement case.
In this regard, petitioner is minimally entitled to receive the clandestine psychological report that formed the very basis for the disqualification for reinstatement, as well as all other rights attendant to a hearing held pursuant to article 3 of the State Administrative Procedure Act. Finally, to the extent that petitioner signed a waiver purporting to extinguish these rights, the waiver is a nullity inasmuch as respondent's policy requiring all applicants to sign the consent and release form is an unpromulgated rule under the definition of "[r]ule" within State Administrative Procedure Act § 102 (2) (a) (i), and therefore is without effect (see Matter of Cordero v Corbisiero, 80 NY2d 771, 772-773 [1992]; Matter of HD Servs., LLC v New York State Comptroller, 51 AD3d 1236, 1237-1238 [3d Dept 2008]; compare Matter of Teresian House Nursing Home Co. v Chassin, 218 AD2d 250, 253-254 [3d Dept 1996]).[FN2] Accordingly, respondent's refusal to provide petitioner the psychological report and the reasons for denial of reinstatement denied him the protections and procedures codified in Civil Service Law § 71 and 4 NYCRR 5.9. As such, respondent's determination was "in violation of lawful procedure [and] was affected by an error of law" (CPLR 7803 [3]) and we remit the matter for a hearing pursuant to article 3 of the State Administrative Procedure Act. In light of this determination, petitioner's remaining contentions have been rendered academic.
Egan Jr., J.P., Clark, Ceresia and Fisher, JJ., concur.
ORDERED that the judgment is modified, on the law, without costs, by reversing so much thereof as dismissed the first and third causes of action; it is declared that respondent's policy requiring all applicants to sign the consent and release form is an unpromulgated rule and therefore without effect; petition/complaint granted to the extent that the determination of respondent denying petitioner's application for reinstatement is annulled and matter remitted to respondent for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Matter of Coleman v State of New York involved a non-occupational disability reinstatement under Civil Service Law § 73 (see 38 AD3d at 1045) to which the protections and procedures set forth in 4 NYCRR 5.9 do not apply (see Matter of Allen v Howe, 84 NY2d at 672-673).

Footnote 2: In an affidavit offered by respondent in support of its answer, the coordinator of respondent's Investigator Employee Investigations Unit and Associate Director of Personnel stated that "[a]ll Correction Officer Trainee applicants and former Correction Officers seeking reinstatement are required to sign" the consent and release form. This implies that the signing of the form is a policy that is applied without regard to the facts or circumstances of individual cases — there is no case-by-case analysis as to whether an applicant will be required to sign this form; instead, all applicants are required to sign it and waive their rights to access the results and other information surrounding their psychological evaluations. As such, this policy falls within the definition of a rule (see State Administrative Procedure Act § 102 [2]), however, it was not properly promulgated (see State Administrative Procedure Act § 202).