Matter of Concourse Rehabilitation & Nursing Ctr., Inc. v Zucker (2023 NY Slip Op 03378)

Matter of Concourse Rehabilitation & Nursing Ctr., Inc. v Zucker

2023 NY Slip Op 03378

Decided on June 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 22, 2023

534638 
[*1]In the Matter of Concourse Rehabilitation and Nursing Center, Inc., Appellant,
v
Howard Zucker, as Commissioner of Health, et al., Respondents.

Calendar Date:May 3, 2023

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Ceresia, JJ.

O'Connell & Aronowitz, PC, Albany (Cornelius D. Murray of counsel), for appellant.
Letitia James, Attorney General, Albany (Kate H. Nepveu of counsel), for respondents.

Pritzker, J.
Appeal from a judgment of the Supreme Court (Margaret T. Walsh, J.), entered December 13, 2021 in Albany County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78 and action for declaratory judgment, to, among other things, review a determination of the Department of Health disallowing petitioner's claim for Medicaid reimbursements related to parking expenses.
Petitioner is a licensed, for-profit, residential health care facility that receives reimbursement of its capital and operating costs through the Medicaid program. The facility began operating in the South Bronx in 1995, and later, in order to provide additional parking for key staff, began leasing from a third party 26 parking spots in a commercial parking lot near the facility. Petitioner subsequently included the cost of these parking spots in its 2017 cost report for reimbursement by Medicaid. In a February 2017 letter, the director of the Bureau of Residential Health Care Reimbursement Office of Health Insurance Programs for the Department of Health (hereinafter DOH) rejected this reimbursement request. Petitioner administratively appealed this determination. In a letter from the bureau dated May 2017, DOH rejected petitioner's appeal as the "regulations do not allow for reimbursement of real property leases entered into after March 10, 1975." Petitioner thereafter initiated this combined CPLR article 78 proceeding and action for declaratory judgment, seeking, among other things, to annul as arbitrary and caprious the determination that petitioner could not include the lease for parking spaces as part of its Medicaid reimbursement. Supreme Court dismissed the petition, finding, among other things, that DOH did not act in an arbitrary and capricious or irrational manner in denying the reimbursement for the lease for renting the additional parking spaces as it was directly barred by 10 NYCRR 86-2.21 (f) (3). Petitioner appeals.
Petitioner's primary argument is that DOH's denial of reimbursement for the lease of the parking spaces is arbitrary and capricious. "In a CPLR article 78 proceeding to review a determination of an administrative agency, the standard of judicial review is whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion" (Matter of Williams v New York State Dept. of Corr. & Community Supervision, 212 AD3d 65, 68 [3d Dept 2022] [internal quotation marks and citation omitted]; see CPLR 7803 [3]). "[R]espondents' rate-setting actions are quasi-legislative in nature, and DOH is entitled to a high degree of judicial deference, especially when acting in the area of its particular expertise, such that petitioner[ ] bear[s] the heavy burden of showing that DOH's rate-setting methodology is unreasonable and unsupported by any evidence" (Matter of Wayne Ctr. for Nursing & Rehabilitation, LLC v Zucker, 197 AD3d 1409, 1413-1414 [3d Dept [*2]2021], lvs denied 37 NY3d 919 [2022] [internal quotation marks and citations omitted]; see Andryeyeva v New York Health Care, Inc., 33 NY3d 152, 174 [2019]).
The DOH rate-setting regulations are complex, and part of the purpose behind the "methodology [is] to encourage nursing homes to contain costs and operate efficiently and economically in line with their reimbursement rates" (Matter of Nazareth Home of the Franciscan Sisters v Novello, 7 NY3d 538, 543 [2006]; see generally Matter of Consolation Nursing Home v Commissioner of N.Y. State Dept. of Health, 85 NY2d 326, 329-330 [1995]). Medicaid rates consist of "four separate and distinct components" (10 NYCRR 86-2.10 [b] [1] [ii]), namely, "direct [costs,] indirect [costs,] noncomparable [costs] and capital [costs]" (10 NYCRR 86-2.10 [a] [6]; Lichtman v McBarnette, 1992 WL 96356, *1, 1992 US Dist LEXIS 5861, *2 [SD NY, Apr. 27, 1992, 91 Civ 5008 (LLS)]). Direct, indirect and noncomparable costs make up the operating component of the rate (see 10 NYCRR 86-2.40 [b]). As relevant here, direct costs are those associated with hands-on care of residents and indirect costs are those associated with administration, including employee fringe benefits and certain other costs (see 10 NYCRR 86-2.10 [c] [1], [d] [1]). Also, as relevant here, capital costs include two categories of expenses: those related to land, buildings and nonmovable equipment — principally interest on capital indebtedness — and those related to movable equipment (see 10 NYCRR 86-2.10 [g]; 86-2.20, 86-2.21, 86-2.22). Regarding land, buildings and nonmovable equipment, allowable capital costs consist of specific payment factors "that, in any year of useful facility life, are applicable to the facility" — subject to enumerated regulatory provisions (10 NYCRR 86-2.21 [e] [1]).[FN1] Significantly, the regulation cited by DOH in rejecting petitioner's request for reimbursement for the lease of the parking spaces as a capital cost specifically states that "[t]he capital cost component shall not be affected by any sale, lease or transfer occurring after March 10, 1975" (10 NYCRR 86-2.21 [f] [3]). Within the mandated fiscally restrained regulatory landscape, the effect of this provision promotes a measured calculus that does not directly reimburse facilities for the purchase or lease of land after March 10, 1975, but rather, only for the interest on the debt incurred in acquiring land and the costs of making capital improvements to it (see generally Hurlbut v Axelrod, 101 AD2d 999, 999 [4th Dept 1984]).
In denying the reimbursement for the lease of the parking spaces, DOH directly applied 10 NYCRR 86-2.21 (f) (3), based on the actual language of the regulation coupled with the relevant cost containment policy issues at hand (see generally Matter of Wayne Ctr. for Nursing & Rehabilitation, LLC v Zucker, 197 AD3d at 1415-1416). "[G]iving deference to DOH's interpretation of its own regulations in an area of its expertise, we conclude that respondents' [*3]interpretation at issue . . . [is] not irrational, arbitrary, capricious or contrary to law" (id. at 1417; see Matter of SCO Family of Servs. v New York State Dept. of Health, 149 AD3d 753, 755 [2d Dept 2017]). Although petitioner argues that the application of the regulation is too broad, thwarting other statutory mandates, and that the purpose for the regulation is limited to self-dealing fraudulent type leases, there is nothing contained in the text of the regulation or the history to support this interpretation. Moreover, merely offering an alternative interpretation of a quasi-legislative regulation, even if rational, is insufficient to support a judicial finding nullifying the agency's interpretation as arbitary and capricious (see generally Andryeyeva v New York Health Care, Inc., 33 NY3d at 177). We find petitioner's remaining assertion similarly without merit.
Egan Jr., J.P., Lynch, Clark and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: "Useful facility life" is defined as "a period of 40 years measured from the calendar year in which a facility commences operations as determined by the commissioner" (10 NYCRR 86-2.21 [a] [7]).