In the Matter of LAKESHORE NURSING HOME et al., Respondents, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants. (And Two Other Related Proceedings.)

In the Matter of NORTONIAN NURSING HOME et al., Respondents, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants.

Third Department, July 23, 1992

334

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Clifford A. Royael* and *Peter G. Crary* of counsel), for appellants.

*Harter, Secrest & Emery (Thomas G. Smith, Carol L. O'Keefe* and *Ross P. Lanzafame* of counsel), for respondents.

## OPINION OF THE COURT

WEISS, P. J.

In 1980 Congress amended the joint Federal-State grant-in-aid program established pursuant to title XIX of the Federal Social Security Act (42 USC § 1396 *et seq.; see,* 94 US Stat 2650-2651), which is now commonly known as the Boren Amendment. This statute requires a State participating in the

Medicaid program to provide for "payment * * * of the hospital services, nursing facility services, and services in an intermediate care facility for the mentally retarded * * * through the use of rates * * * which the State finds, and makes assurances satisfactory to the Secretary [of the United States Department of Health and Human Services], are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards" (42 USC § 1396a [a] [13] [A]). The avowed purposes for the Boren Amendment were to provide the States with greater flexibility in developing reimbursement to skilled nursing facilities, intermediate care facilities and in-patient hospital services, as well as to increase the economy and efficiency of all plans (see, Pinnacle Nursing Home v Axelrod, 928 F2d 1306, 1309-1310; 1981 US Code Cong & Admin News 396, 744-745). The Boren Amendment replaced the prior retrospective reimbursement policy based on reasonable costs incurred by each individual facility regardless of efficiency or economy, which were found to have been inflationary.

Public Health Law § 2807 (3) and § 2808 (3) assign responsibility for determining and establishing reimbursement rates meeting Federal standards for residential health care facilities participating in the Medicaid program to the State Commissioner of Health subject to review by the Director of the Budget. The methodology formulated and placed into operation established the "snapshot" year of 1983 as the benchmark for operating costs and then trended those costs forward by fixed percentages annually (the "trend factor") to allow for inflation (see, 10 NYCRR subpart 86-2).

After receiving their 1989 Medicaid reimbursement rates and exhausting their administrative remedies, two groups of nursing home operators commenced separate CPLR article 78 proceedings (Matter of Hurlbut Nursing Home v Axelrod [hereinafter the Hurlbut proceeding] and Matter of Penfield Nursing Home v Axelrod [hereinafter the Penfield proceeding]). The petitions in these proceedings contended that the 1989 reimbursement rates established by the Department of Health (hereinafter DOH) are violative of the Boren Amendment (42 USC § 1396a [a] [13] [A]) and applicable State law because they were not "reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities" and sufficient to assure that the individuals

eligible for medical assistance have "reasonable access" to nursing home services. They claim the rates established are arbitrary and capricious because they are unrepresentative of their current costs and that the State failed to conduct sufficient empirical studies upon which to base their assurances to the United States Department of Health and Human Services that the rates established satisfy Boren Amendment requirements. In a third CPLR article 78 proceeding, Lakeshore Nursing Home and several other nursing home facilities commenced a similar proceeding (hereinafter the *Lakeshore* proceeding) against the same respondents based on the same allegations, except that it challenged the rate year 1990. All three proceedings seek annulment of New York's rate-setting methodology on grounds that it is illegal and violative of the Federal and State Constitutions, violative of lawful procedure, arbitrary and capricious, an abuse of discretion, erroneous as a matter of law, unlawfully discriminatory, and violative of due process and equal protection under both Constitutions. The relief sought includes a declaration that the rates themselves and the procedures employed to establish those rates are unlawful; that respondents be enjoined from using the over-all Medicaid rate methodology based on 1983 cost data, from failing to include as basic salary expense unavoidable temporary and agency personnel pool costs, and from the use of non-New York-specific inflation indexes for purposes of trending forward historical cost data; and for an order requiring respondents to pay amounts allegedly denied or withheld as a result of the unlawful procedure utilized in computation of their 1989 and 1990 Medicaid rates.

On July 26, 1990, a stipulation was executed by counsel which provided that the legal and factual issues in the *Hurlbut* and *Penfield* proceedings were identical to those in the *Lakeshore* proceeding and that the evidence submitted in the proceeding of one could be incorporated by reference in the others. Supreme Court rendered a single decision which encompassed all three proceedings and determined that the methodology used by respondents to establish Medicaid rates was arbitrary and unlawfully discriminatory. The court ordered that a separate judgment be entered in each proceeding which, *inter alia,* annulled the 1989 Medicaid reimbursement rate in the *Hurlbut* and *Penfield* proceedings and the 1990 rate in the *Lakeshore* proceeding.

On February 21, 1991, Nortonian Nursing Home together with several other nursing home operators commenced a

fourth proceeding (hereinafter the *Nortonian* proceeding), seeking essentially the same relief as the *Penfield, Hurlbut* and *Lakeshore* petitioners, with respect to their 1991 Medicaid reimbursement rates. On July 18, 1991, a stipulation was executed by counsel in which the parties agreed that the issues in this proceeding were identical to those in the three other proceedings except that the rate year in this case was 1991. Supreme Court granted judgment in favor of the *Nortonian* petitioners annulling the 1991 rate as arbitrary, capricious and an abuse of discretion together with the same relief granted the *Penfield, Hurlbut* and *Lakeshore* petitioners.

In its decision, Supreme Court focused on the failure of respondents[1] to offer empirical data to support their contention that they have made "findings" upon which they made assurances to the Secretary of Health and Human Services that the Medicaid reimbursement rates are reasonable and adequate and comply with their obligations under the Boren Amendment. Specifically, the court found that conceptual and theoretical conclusions offered by the State in explanation of its rate-fixing methodology did not comport with Federal and State regulations. More specifically, the court agreed with petitioners that the use of the 1983 costs trended forward each year by the national inflation percentages failed to represent the true cost of an efficiently and economically operated facility providing care and services in conformity with applicable State and Federal laws. The court found that New York's methodology did not consider any cost reports submitted by petitioners for any calendar year after 1983 in calculating the operating portion of the Medicaid reimbursement rates for 1986, 1987, 1989 or 1990, but instead that their operating costs had effectively been "locked in" at the 1983 amounts and then trended forward by fixed percentages to allow for inflation. Supreme Court further found that respondents' use of a "wage equalization factor", which attempted to neutralize the differences in wage and fringe benefit costs between and among regions of New York, was inadequate to overcome deficiencies in the State's methodology. The court also found that respondents' failure to recognize and consider nursing salary expenses paid for unavoidable temporary and agency pool costs was arbitrary, capricious, an abuse of discretion,

---

1. We note Louis Sullivan, Secretary of the United States Department of Health and Human Services has not been served and thus is not a party to these proceedings. No relief has been sought or rendered against him.

null and void, as was respondents' use of non-health care specific inflation factors used in the process of trending forward for inflation.

On this appeal, respondents contend that petitioners have failed to sustain their burden to prove any violation of the substantive or procedural requirements of the Boren Amendment in the State's rate-setting methodology. They contend that submission of statistical information by the combined number of petitioners represents only a small percentage of the more than 700 nursing homes in the State, the vast majority of which have operated profitably under the challenged rate methodology, and that the over-all rates are adequate and reasonable to meet the costs which must be incurred by efficiently and economically operated facilities which are entitled to prospective reimbursement only, and not on the basis of actual, individualized incurred costs *(see, Matter of Sigety v Ingraham,* 29 NY2d 110). Respondents argue that the decision of the Second Circuit Court of Appeals in *Pinnacle Nursing Home v Axelrod* (928 F2d 1306, *supra),* which held that its 1987 rate-making methodology violated the procedural requirements of the Boren Amendment, is not at issue here and, in any event, not pertinent to these proceedings. Finally, they argue that there is a rational basis for the State's rate-setting methodology which provides an element of stability in the reimbursement system by enabling providers to adequately plan and gain the benefit of economizing measures effected after 1983 through cost containment *(see,* 10 NYCRR 86-1.17 [a] [3], [4]). Respondents deny allegations that they failed to recognize increases in the cost of nursing services, pointing to a nursing adjustment effected in 1989 which provided additional moneys for health personnel recruitment and retention. Respondents contend that the State-health specific and New York-specific indexes have in fact been utilized to properly reflect nursing home costs in the rate-fixing methodology. Finally, they deny that their over-all Medicaid reimbursement rates either unlawfully discriminate against petitioners or denies them equal protection under the laws.

■ Our decision today holds that respondents have failed to demonstrate compliance with the Boren Amendment with respect to the requirement that they make "findings" upon which assurances are to be made to the Secretary of Health and Human Services that the Medicaid reimbursement rates are reasonable and adequate to meet the costs of efficiently

and economically operated facilities (42 USC § 1396a [a] [13] [A]). Supreme Court held that respondents had failed to offer empirical data to demonstrate that "findings" had been made to support their "assurances" to the Secretary. We agree. While, indeed, the record includes copies of the letters sent by, or on behalf of, the State Commissioner of Social Services to the Regional Administrator of the Health Care Financing Administration of the United States Department of Health and Human Services in 1987, 1988 and 1989 which recite that they have enclosed the "findings and assurances required to be submitted", we hold those submissions to be deficient and not in compliance with the statutory requirements.

Although it is true that a State is free to create its own method for arriving at the findings, the States are not absolved from making the required findings *(see, Amisub [PSL], Inc. v State of Colo. Dept. of Social Servs.,* 879 F2d 789, 797, *cert denied* 496 US 935). In *Pinnacle Nursing Home v Axelrod* (928 F2d 1306, *supra),* the Second Circuit Court of Appeals held that the respondent there, the State Commissioner of Health, who is one of the respondents in this case, had failed to make adequate "findings" because he failed to establish a nexus between the efficient and economic operation of health care facilities and their respective wage rates *(supra,* at 1313). In *Wilder v Virginia Hosp. Assn.* (496 US 498, 519), the United States Supreme Court held that "the statute requires the State, in making its findings, to judge the reasonableness of its rates against the objective benchmark of an 'efficiently and economically operated facility' ". Admittedly, there is no rigid catechism for the recitation of "findings", but that absence does not furnish either an excuse for the failure to prepare and to submit articulable facts and figures, whether extracted from the certified annual reports filed with respondents by nursing homes or other reliable sources, or authorize a rote repetition of theories and hypotheses to the Secretary accompanying respondents' assurances of compliance with the statute. "Mere recitation of the wording of the federal statute is not sufficient for procedural compliance. There is a presumption that a state will engage in a bona fide finding process before it makes assurances to [the Health Care Financing Administration]" *(Amisub [PSL], Inc. v State of Colo. Dept. of Social Servs., supra,* at 797).[2] We find that respondents

---

2. We note that the Attorney-General, in his reply brief, has candidly conceded that respondents failed to timely submit the requisite "findings"

have failed to comply with the statutory requirement and that such failure must result in the denial of a presumption that respondents' methodology is valid based upon the Secretary's acceptance of the assurances.

■ We further hold that notwithstanding respondents' failure to have procedurally supported their assurances to the Secretary with appropriate findings as required by the Boren Amendment, petitioners' allegations of substantive violations remain to be addressed. Supreme Court found, as a matter of fact, that the Medicaid reimbursement rates as promulgated by respondents for the years at issue failed to reasonably and adequately meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable regulations and quality and safety standards. Respondents have controverted this argument and contend that the overwhelming majority of the 700 licensed nursing homes in New York operate profitably under the promulgated rates.

CPLR article 78 proceedings are summary in nature and require resolution of factual disputes at a hearing (CPLR 7804 [h]). Here, as in *Pinnacle Nursing Home v Axelrod (supra,* at 1316), the record does not include a resolution of the sharply controverted factual issue of whether the rates promulgated by respondents for the three subject years were reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated facilities; accordingly, these four proceedings must be remitted to Supreme Court for hearing and determination of those issues *(see, Matter of Currier v Tompkins-Seneca-Tioga Bd. of Coop. Educ. Servs.,* 80 AD2d 979; *see also, Capelin Assocs. v Globe Mfg. Corp.,* 34 NY2d 338).

■ On a final note, we find that respondents are correct in their contention that petitioners have failed to demonstrate a denial of equal protection under the law. The geographical modifications in the Medicaid reimbursement rates involve no suspect classifications and must be upheld if rationally based

---

found lacking in the *Pinnacle* case. In response to the decision in *Pinnacle,* DOH has made findings for sumbission to the Federal agency for the rate years at issue herein but the record in this case does not reflect these recent developments. The Attorney-General suggests that, in lieu of the recalculation of petitioners' rates made necessary because of a "bare procedural" violation of the Boren Amendment, the matters should be remitted to Supreme Court where that court could then develop a record by hearing or otherwise in which the procedural issue could be decided.

*(see, Frontiero v Richardson,* 411 US 677, 683). Respondents' efforts to neutralize disadvantages resulting from regional differences in wage and costs in a social and economic program are entitled to deference *(see, Dandridge v Williams,* 397 US 471, 484-485; *Pinnacle Nursing Home v Axelrod,* 928 F2d 1306, 1317, *supra).* Petitioners have failed to prove a lack of rationality in the classifications made by respondents. We therefore find that Supreme Court erred in holding that the rates were unlawfully discriminatory and resulted in the denial of equal protection of the law to petitioners.

MIKOLL, YESAWICH JR., CREW III and MAHONEY, JJ., concur.

Ordered that the judgments are modified, on the law, without costs, by reversing so much thereof as granted petitioners' applications to annul the Medicaid reimbursement rates; petitions dismissed to the extent they allege unlawful discrimination and matters remitted to the Supreme Court for further proceedings not inconsistent with this court's decision; and, as so modified, affirmed.