■ In the Matter of 1300 FRANKLIN AVENUE MEMBERS, LLC, Respondent, v BOARD OF TRUSTEES OF INCORPORATED VILLAGE OF GARDEN CITY et al., Appellants. (Matter No. 1.) In the Matter of LT PROPCO, LLC, Respondent, v BOARD OF TRUSTEES OF INCORPORATED VILLAGE OF GARDEN CITY et al., Appellants. (Matter No. 2.) [880 NYS2d 133]—

In related hybrid proceedings pursuant to CPLR article 78 to review two determinations of the Board of Trustees of the Incorporated Village of Garden City, each dated March 7, 2007,

which imposed tax levies in the sums of $458,854.54 upon 1300 Franklin Avenue Members, LLC, and $457,564.55 upon LT Propco, LLC, respectively, and related actions for judgments declaring that the special assessments underlying the tax levies are null and void, the Board of Trustees of Incorporated Village of Garden City and the Incorporated Village of Garden City appeal from an order and judgment (one paper) of the Supreme Court, Nassau County (Spinola, J.), entered February 20, 2008, which, in effect, denied those branches of their respective motions which were to dismiss the petitions, in effect, converted those branches of their respective motions which were to dismiss the complaints into motions for summary judgment dismissing the complaints and thereupon denied those branches of the converted motions, and granted the petitions.

Ordered that the order and judgment is modified, on the law, (1) by deleting the provision thereof granting the petitions, and (2) by adding a provision thereto dismissing, as unnecessary, the causes of action declaring that the special assessments underlying the tax levies are null and void; as so modified, the order and judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings in accordance herewith.

The petitioners/plaintiffs in both of the instant hybrid proceedings and actions (hereinafter the petitioners) are commercial property owners challenging special benefit assessment tax levies imposed upon their properties by the Board of Trustees of Incorporated Village of Garden City (hereinafter together with the Incorporated Village of Garden City, the Village) on the ground that the methodology used by the Village to determine the assessment was arbitrary, irrational, and in violation of Village Law § 22-2200 (2), which requires that such assessments be "just and equitable."

The challenged assessment was charged to property owners in a specified commercial district deemed by the Village to have been benefitted by the Village's purchase of two parcels of real property to enlarge a municipal parking field (hereinafter Field 10). The methodology underlying the assessment was based on the maximum permissible floor area ratio (hereinafter FAR) of the properties, apparently without regard to their actual FAR, their proximity to Field 10, or whether the properties were, prior to the parking field improvements, already in compliance with the Village Building Zoning Ordinance (hereinafter BZO) parking space requirements. The petitioners, who concede that their properties received some benefit, albeit indirectly, from the improvement of Field 10, contend that the Village's ap-

portionment methodology was arbitrary and capricious since the assessments against their properties comprise 36% of the total assessment, even though their properties are situated approximately 1,200 feet from Field 10, could never expand to the maximum permissible FAR, and are already in compliance with the Village's parking space requirements. After the petitioners commenced the hybrid proceedings and actions, inter alia, challenging the assessments imposed upon their properties, the Village moved to dismiss both petitions/complaints, purportedly on the ground that "substantial evidence" submitted at a public hearing supported the assessments upon the petitioners' properties. The Supreme Court, in effect, denied those branches of the Village's motions which were to dismiss the petitions, in effect, converted those branches of the Village's motions which were to dismiss the complaints into motions for summary judgment dismissing the complaints, denied those branches of the Village's motions, and granted the petitions. The Village appeals and we modify.

On a pre-answer motion pursuant to CPLR 7804 (f) to dismiss a petition upon objections in point of law, only the petition may be considered, and all of its allegations are deemed to be true (*see Matter of Bloodgood v Town of Huntington*, 58 AD3d 619, 621 [2009]; *Matter of Long Is. Contractors' Assn. v Town of Riverhead*, 17 AD3d 590, 594 [2005]; *Matter of Zaidins v Hashmall*, 288 AD2d 316 [2001]; *Matter of De Paoli v Board of Educ., Somers Cent. School Dist.*, 92 AD2d 894 [1983]). No additional facts alleged in support of the motion may be considered (*see Matter of Mattioli v Casscles*, 50 AD2d 1013 [1975]). Since those branches of the Village's motions which were to dismiss the petitions did not seek dismissal based upon an objection in point of law, but instead sought relief on the merits, the Supreme Court properly, in effect, denied those branches of the motions.

CPLR article 78 proceedings are summary in nature (*see* CPLR 409 [b]; *Matter of Lakeshore Nursing Home v Axelrod*, 181 AD3d 333, 340 [1992]) and, thus, a motion for summary judgment addressed to the merits of the petition is unnecessary. Accordingly, the Supreme Court properly addressed the merits of the petition without the need to convert those branches of the Village's motions which were to dismiss the petitions into motions for summary judgment dismissing the petitions. Nonetheless, where, as here, there are facts in dispute that must be resolved before a reviewing court may properly determine the outcome of the proceeding under the applicable standard of review, a hearing must be conducted forthwith by the Supreme

Court to resolve those factual issues (*see* CPLR 7804 [h]; 409 [a], [b]; *Matter of Akey v Town of Plattsburgh*, 300 AD2d 871, 872-873 [2002]).

Moreover, since the issues of law in dispute here are limited to whether the determinations imposing the assessments were affected by error of law, arbitrary and capricious, an abuse of discretion, or irrational, they are subject to review only pursuant to CPLR article 78 (*see* CPLR 7803 [3]; *Matter of Castroll v Incorporated Vil. of Head of Harbor*, 2 AD3d 443 [2003]; *Matter of Garden Homes Woodlands Co. v Town of Beekman*, 275 AD2d 370 [2000]; *cf. Cloverleaf Realty of N.Y., Inc. v Town of Wawayanda*, 43 AD3d 419, 420 [2007]; *Matter of Pokoik v Incorporated Vil. of Ocean Beach*, 143 AD2d 1021, 1022 [1988]), thus rendering unnecessary the causes of action for a judgment declaring that the special assessments are null and void (*see Matter of Kogel v Zoning Bd. of Appeals of Town of Huntington*, 58 AD3d 630 [2009]; *see also Matter of Riverhead Tavern v New York State Liq. Auth.*, 61 AD3d 877 [2009]).

Contrary to the Village's contention, the "substantial evidence" standard (CPLR 7803 [4]) is not applicable, as the challenged determinations did not arise from a quasi-judicial hearing required by law. Rather, as noted above, the proper standard of review is whether the discretionary determinations to impose the challenged assessments were affected by error of law, arbitrary and capricious, an abuse of discretion, or irrational (*see* CPLR 7803 [3]; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222, 230-231 [1974]; *Matter of Zupa v Board of Trustees of Town of Southold*, 54 AD3d 957 [2008]; *Matter of Halperin v City of New Rochelle*, 24 AD3d 768, 770 [2005]).

Under the Real Property Tax Law, the term "special assessment" is defined, in pertinent part, as "a charge imposed upon benefited real property *in proportion to the benefit received* by such property to defray the cost" (RPTL 102 [15] [emphasis added]). "When the cost of any such local improvements has been determined the board shall *apportion and assess* the part of the expense to be raised by local assessments upon the lands in such assessment district, *according to frontage, area, or otherwise,* as the board may determine during the proceedings to be *just and equitable*" (Village Law § 22-2200 [2] [emphasis added]). Further, "special assessments are presumed to be valid, regular and legal and . . . the burden of rebutting the presumption falls upon the landowner, who must show that the properties assessed were not in fact benefited" (*Matter of Pokoik v*

*Incorporated Vil. of Ocean Beach,* 143 AD2d 1021, 1022 [1988]; *see Matter of Donohue v Dutchess County Legislature,* 277 AD2d 377 [2000]; *Matter of New York State Dormitory Auth. v Board of Trustees of Hyde Park Fire & Water Dist.,* 206 AD2d 483 [1994], *affd* 86 NY2d 72 [1995]). "[A] determination by a board with respect to the amount of benefit conferred on properties by improvements involves the exercise of the legislative power which will not be interfered with unless it is shown to be so arbitrary or palpably unjust as to amount to a confiscation of property" (*Matter of New York State Dormitory Auth. v Board of Trustees of Hyde Park Fire & Water Dist.,* 206 AD2d at 484; *see Matter of Pokoik v Incorporated Vil. of Ocean Beach,* 143 AD2d at 1022).

In opposition to the petition, the Village argued that its methodology, which apportioned the assessment based on the maximum permissible FAR of each property it deemed benefitted by the improvements to Field 10, complied with Village Law § 22-2200 (2). That provision specifically and broadly authorizes a village board of trustees to apportion an assessment based upon, inter alia, the relevant "area" (Village Law § 22-2200 [2]). Moreover, the Village contended that it assessed all properties within the relevant Franklin Avenue commercial district without regard to proximity to Field 10 on the rational presumption that increased parking in one parking field will alleviate the demands on all other parking fields in the district (*see Matter of Palmer v Town of Kirkwood,* 288 AD2d 540 [2001]; *Sheldon v Town of Highlands,* 153 AD2d 733, 737 [1989]; *Matter of Scarsdale Chateaux RTN v Steyer,* 53 AD2d 672, 673 [1976], *affd* 41 NY2d 1043 [1977]).

The petitioners, however, raised triable issues of fact (*see* CPLR 409 [b]; 7804 [h]) as to the precise methodology employed by the Village, which was based on the maximum permissible FAR, rather than the actual FAR. The administrative record before us is not sufficiently developed to permit us to ascertain whether and to what extent the Village considered if the properties could practically be built to their maximum permissible FARs, or whether certain assessed properties required the Field 10 improvements to comply with the BZO parking space requirements. In addition, the 1997 Business Planning Coalition Report (hereinafter the 1997 report), submitted by the petitioners, support their contention that the improvements to Field 10 primarily benefitted the properties directly adjacent to Field 10, rather than their properties:

"Parking Field 10-1000 to 1050 Franklin Avenue. Construction of the office buildings at 1010 and 1050 Franklin Avenue

included limited private parking for 46 vehicles but did not include a simultaneous expansion of the 199-vehicle capacity of Parking Field 10. This reduced the availability of parking from 3.8 spaces/1000 SF to 1.7 spaces/1000 SF of office and retail space for the block partially occupied by these buildings (west of Franklin Avenue between 10th and 11th Street[s]). The Village resolutions approving the issuance of permits for both buildings anticipated that adequate parking would be available over time. . . .

"A ratio of 1.7 spaces/1000 SF is only 39% of the commercially competitive and Village Code requirement of 4.2 spaces/1000 SF. *No other parking field in the Village has less than 50% of the Village Code [BZO] requirement.* According to Cushman & Wakefield, a leading commercial real estate brokerage firm active in the Garden City market, the office space above the Astoria Federal Savings Bank at 1000 Franklin Avenue is not commercially viable because of the lack of parking and the ground floor tenant at 1050 Franklin Avenue is moving across Franklin to 1055 Franklin because of the grater availability of parking in Parking Field 9E . . .

"3. Parking Field 10-Capacity Improvement. As previously mentioned, the construction of the office buildings at 1010 and 1050 Franklin Avenue was not accompanied by an expansion of Parking Field 10, which serves these buildings and others in the block between 10th and 11th Streets west of Franklin. Current parking supply on this block, a total of 245 spaces consisting of 199 public spaces and 46 private spaces, produces a supply of only 1.7 spaces/1000 SF of office and retail space, compared with the commercially competitive and [BZO] ratio of 4.2 spaces/1000 SF. This results in a shortage of 383 spaces at full occupancy. *Clearly, this block does not have a commercial viable supply of parking, which is the primary reason for the 25% vacancy rate in this block.*

"The 383 space shortfall cannot be supplied by the adjacent Parking Fields 11 and 9W. Parking Field 11 [which is adjacent to the petitioners' properties] is not a competitive source of supply because it is hazardous for both pedestrians and vehicles to cross 11th Street from Parking Field 10.

"Although some parking is currently available in Parking Field 9W across 10th Street, it is a result of vacancies in the buildings abutting the field, and this parking is well over 500' away and not easily visible from 1050 Franklin. Parking is also available in Parking Field 9E across Franklin Avenue, but it is more than 500' away across a very busy roadway and not visible" (emphasis added).

As a remedy for this parking shortfall, the 1997 report recommended that the Village acquire parcels located at 116 Eleventh Street and 115 Tenth Street to expand the parking available at Field 10, which is precisely what the Village did, leading to the challenged assessments. The 1997 report raised a triable issue of fact as to whether the improvements to Field 10 directly benefit the properties immediately adjacent to Field 10, particularly 1010 and 1050 Franklin Avenue, neither of which complied with the BZO parking space requirements prior to the expansion of Field 10. Nevertheless, the Village's apportionment methodology assesses those two properties at values of only $94,214.72 (for 43,240 sq. ft.) and $126,374.97 (for 56,000 sq. ft.), respectively, which together comprise only 8.69% of the $2,539,866.75 total assessment imposed against all of the property owners in the district.

We therefore remit the matter to the Supreme Court, Nassau County, for a hearing to resolve these disputed factual issues after the Village serves answers to the petitions, and a new determination thereafter on the petitions, which shall address whether the challenged assessments were affected by error or law, arbitrary and capricious, an abuse of discretion, in violation of Village Law § 22-2200, or so excessive as to be tantamount to an improper taking of private property (*cf. Matter of New York State Dormitory Auth. v Board of Trustees of Hyde Park Fire & Water Dist.*, 206 AD2d 483 [1994]). Rivera, J.P., Dillon, Belen and Hall, JJ., concur.