Matter of Evercare Choice, Inc. v Zucker (2023 NY Slip Op 03741)

Matter of Evercare Choice, Inc. v Zucker

2023 NY Slip Op 03741

Decided on July 6, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 6, 2023

535367
[*1]In the Matter of Evercare Choice, Inc., Appellant,
v
Howard A. Zucker, as Commissioner of Health, et al., Respondents.

Calendar Date:May 4, 2023

Before:Garry, P.J., Egan Jr., Clark, Reynolds Fitzgerald and Ceresia, JJ.

Moritt Hock & Hamroff LLP, New York City (Peter B. Zlotnick of counsel), for appellant.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondents.

Clark, J.
Appeal from a judgment of the Supreme Court (Adam W. Silverman, J.), entered March 31, 2022 in Albany County, which dismissed petitioner's application, in a combined proceeding pursuant to CPLR article 78, plenary action and action for declaratory judgment, to review, among other things, a determination by respondent Department of Health calculating petitioner's nursing home transition rates for the 2017-2018 fiscal year.
Petitioner is a managed long-term care (hereinafter MLTC) plan responsible for providing health and long-term care services to chronically ill or disabled individuals over the age of 21. MLTC plans are funded, pursuant to a contract with respondent Department of Health (hereinafter DOH), on a partially capitated per member per month basis; put another way, DOH pays an MLTC plan a set monthly rate for each Medicaid recipient enrolled in the plan that month. Using data provided by each plan, DOH calculates a plan's "risk score" from the average risk of the population of members enrolled with each plan during the relevant time period, and the risk score assists DOH in determining the monthly capitation rate paid to each plan. Because all MLTC plans are funded from a single source, the capitation rate calculations must ensure budget neutrality, a standard which guarantees that no financial gain or deficit is created by payments made to the plans. New York is divided into four service regions — the New York City Region (region 1), the Mid-Hudson/Northern Metro Region (region 2), the Northeast/Western Region (region 3) and the Rest of State Region (region 4) — and rates are calculated separately for each region. Petitioner is in region 2.
On November 8, 2018, DOH circulated certain draft documents showing, among other things, petitioner's revised risk score (1.0513) and capitation rates that would be effective for the 2018-2019 fiscal year (April 2018 through March 2019). The next day, DOH received an email from a plan representative expressing concern with the risk score assigned to an MLTC plan in region 1. Then, on November 15, 2018, that same representative contacted DOH and requested that DOH institute a freeze of the region 1 risk scores, due to concerns that failure to do so would destabilize the MLTC market. On November 16, 2018, DOH announced that the revised risk scores released on November 8, 2018 would not go into effect. Instead, DOH would freeze the risk scores statewide and revert to using the previously-calculated risk scores — for petitioner, 0.9345. During the risk score freeze, DOH reworked its risk-setting methodology. Using its new methodology, DOH advised petitioner of its new risk score, 1.0489, which became effective upon the end of the freeze on July 1, 2019.
In addition to the capitation rates, DOH also paid MLTC plans an add-on rate for its member population that were permanent nursing home residents. This add-on rate is calculated using multi-year nursing home transition (hereinafter NHT) data submitted [*2]by the plans. In May 2018, DOH provided MLTC plans with an NHT enrollment data survey and informed the plans that the submitted data would be used to calculate the plans' NHT add-on rates for the 2017-2018 fiscal year (April 2017 through March 2018). Petitioner submitted timely responses and, in January 2019, DOH informed petitioner of its NHT add-on rate. Then, in June 2019, petitioner notified DOH that it had submitted erroneous data and requested an opportunity to submit corrected data and have its NHT add-on rate adjusted. DOH agreed to review the data but ultimately determined that it would not update petitioner's NHT add-on rate for the 2017-2018 fiscal year.
Thereafter, petitioner commenced the instant combined proceeding pursuant to CPLR article 78, a plenary action and action for declaratory judgment, comprised of five causes of action. Petitioner sought a judgment declaring that the risk score freeze was an unpromulgated rule in violation of (1) the State Administrative Procedure Act (hereinafter SAPA) and (2) the NY Constitution, and that the risk score freeze, DOH's reversion to a prior risk score during the freeze and DOH's refusal to correct petitioner's NHT add-on rate for the 2017-2018 fiscal year were (3) arbitrary and capricious, (4) an impermissible refusal to perform a duty enjoined upon DOH by law and (5) a breach of contract. Respondents moved pre-answer to dismiss the petition/complaint, which motion was denied. Following joinder of issue, respondents moved for summary judgment dismissing the first, second and fifth causes of action, which petitioner opposed. Supreme Court then rendered a determination on the merits as to all of the causes of action. To that end, the court found that it lacked subject matter jurisdiction over petitioner's breach of contract claim, that the risk score freeze did not violate SAPA or the NY Constitution and that DOH's actions were not arbitrary or capricious or a failure to perform a duty enjoined upon it by law. Consequently, the court dismissed the petition/complaint. Petitioner appeals.
Initially, petitioner argues that the risk score freeze was a rule and that DOH's failure to promulgate it in accordance with SAPA violated SAPA and the NY Constitution. Respondents acknowledge that the risk score freeze was not promulgated in accordance with SAPA but argue that it was unnecessary to do so, as the freeze was not a rule. A rule is "a fixed, general principle to be applied by an administrative agency without regard to other facts and circumstances relevant to the regulatory scheme of the statute it administers" (Matter of Roman Catholic Diocese of Albany v New York State Dept. of Health, 66 NY2d 948, 951 [1985]; accord Matter of Suffolk Regional Off-Track Betting Corp. v New York State Racing & Wagering Bd., 11 NY3d 559, 572 [2008]; see State Administrative Procedure Act § 102 [2] [a]; see also NY Const, art IV, § 8). Here, the imposition of a risk score freeze was a temporary response to [*3]DOH's concerns that its risk-setting methodology was susceptible to manipulation. In instituting the freeze, DOH was still required to review data submitted by the MLTC plans to ensure that the risk scores used were actuarially sound and that the capitation rates were adequate to provide quality of care to the plans' members (see 42 CFR 438.4 [b] [6]; 438.5 [b]; Public Health Law § 4403-f [8]). Because such process "encompasses both fixed and variable factors unique to a particular industrial activity, with those factors to be considered on a case-by-case basis," the risk score freeze was not a rule that required promulgation under SAPA or the NY Constitution (Matter of Entergy Nuclear Indian Point 2, LLC v New York State Dept. of State, 130 AD3d 1190, 1195 [3d Dept 2015] [internal quotation marks, brackets, ellipsis and citation omitted]; see Matter of Teresian House Nursing Home Co. v Chassin, 218 AD2d 250, 254 [3d Dept 1996]). As such, Supreme Court did not err in dismissing the first and second causes of action.
Next, we turn to petitioner's third cause of action alleging that the risk score freeze, DOH's reversion to petitioner's prior risk score during the freeze and DOH's refusal to correct petitioner's NHT add-on rate for the 2017-2018 fiscal year were arbitrary and capricious. When reviewing an administrative determination under CPLR article 78, "judicial review is limited to 'whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion' " (Matter of North Shore Ambulance & Oxygen Serv. Inc. v New York State Emergency Med. Servs. Council, 200 AD3d 1527, 1529 [3d Dept 2021], quoting CPLR 7803 [3]). "An action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts. When a determination is supported by a rational basis, it must be sustained even if the reviewing court would have reached a different result" (Matter of Spence v State Univ. of N.Y., 195 AD3d 1270, 1271 [3d Dept 2021] [internal quotation marks and citations omitted]). Proceedings brought pursuant to CPLR article 78 are summary in nature but, where issues of material fact exist, they must be decided at a hearing (see CPLR 7804 [h]; Matter of 1300 Franklin Ave. Members, LLC v Board of Trustees of Inc. Vil. of Garden City, 62 AD3d 1004, 1006 [2d Dept 2009]; Matter of Lakeshore Nursing Home v Axelrod, 181 AD2d 333, 340 [3d Dept 1992]).
As to petitioner's NHT add-on rate for the 2017-2018 fiscal year, Supreme Court did not err in finding that petitioner failed to establish that DOH's refusal to recalculate said rate using the corrected data was arbitrary and capricious. To that end, there is no dispute that petitioner submitted erroneous data, that such data was used to calculate petitioner's NHT add-on rate for the 2017-2018 fiscal year and that, after receiving corrected data, DOH refused to correct that rate.[FN1] Through affidavits, Daniel Carmody[*4], the Director of the Bureau of Managed Long Term Care Rate Setting for DOH, admitted that NHT rates are not required to be budget neutral, but he then asserted that using the corrected data would require a recalculation of petitioner's capitation rates, which must be budget neutral with the other MLTC plans. As Carmody explained, when a plan submits data about its members, those members are classified as belonging to either the community population or the NHT population. The data pertaining to the community population is used to calculate the risk scores and the capitation rates in a budget neutral manner (see 42 CFR 438.5 [g]), while the data pertaining to the NHT population is used to calculate the NHT add-on rates without budget neutral considerations. Carmody elaborated that using the corrected data would require DOH to reclassify a number of petitioner's members from its community population to its NHT population. This shift in classification would then require DOH to recalculate petitioner's risk score and capitation rate, which, due to budget neutrality, would require DOH to recalculate the capitation rates for the other MLTC plans. Although Alex Falikson — petitioner's actuarial expert — proposed alternative processes that DOH could have followed to retroactively correct petitioner's NHT add-on rate, the mere existence of alternative rational conclusions does not require the annulment of an agency's rational determination (see Matter of Jennings v New York State Off. of Mental Health, 90 NY2d 227, 239 [1997]). Here, Carmody's explanation that correcting petitioner's NHT add-on rate for the 2017-2018 fiscal year would necessitate the recalculation of every MLTC plan's capitation rates provides a rational basis for its refusal. Because petitioner failed to establish that such refusal was arbitrary and capricious, Supreme Court properly dismissed that portion of the third cause of action (see Matter of C.K. v Tahoe, 211 AD3d 1, 14 [3d Dept 2022]; Matter of Fuller v New York State Dept. of Health, 127 AD3d 1447, 1449 [3d Dept 2015]).
Next, we turn to petitioner's argument that Supreme Court erred in dismissing the portion of the third cause of action pertaining to DOH's imposition of the risk score freeze and its reversion to the prior risk scores for the duration of the freeze. The facts are largely undisputed. Briefly, after circulating revised capitation rates for the 2018-2019 fiscal year, Carmody received an email from a representative of an MLTC plan expressing concern about the risk score assigned to a region 1 plan. A week later, the same representative contacted Carmody requesting that DOH freeze the risk scores of plans located in region 1. The next day, at a meeting with the plans, DOH announced a statewide risk score freeze, including its plan to revert to the prior risk scores to calculate the capitation rates during the freeze. In May 2019, DOH informed MLTC plans that it planned to continue the freeze for the 2019-2020 fiscal [*5]year but then lifted the freeze effective July 1, 2019. DOH then declined petitioner's request for a retroactive adjustment of the risk score that was effective during the freeze.
Through affidavits, Carmody explained that, after learning about the plan in region 1 potentially manipulating the risk-setting methodology, DOH became concerned that its methodology was susceptible to more widespread manipulation. Carmody asserted that, due to this concern and to his belief that a single-region freeze was not permitted, DOH opted to impose a statewide freeze while it reworked its risk-setting methodology. Carmody asserted that the freeze was implemented with approval from an independent actuary, and he explained that DOH refused to make retroactive corrections because budget neutrality would then require DOH to retroactively correct the risk scores and capitation rates for the other plans. Falikson, petitioner's actuarial expert, who had 25 years of experience in providing actuarial services in the Medicaid industry, countered that budget neutrality could not justify DOH's determinations regarding the freeze or the risk scores used during the freeze. Falikson explained that those prior risk scores were calculated using outdated data, making them actuarially unsound. Falikson further asserted that freezing rate calculations when inaccuracies were discovered in rate-setting methodology was not uncommon, but DOH's refusal to remedy the discrepancies caused by its decision was unusual. Although Falikson admitted that there is no law or regulation requiring revision of risk scores or capitation rates at any particular interval, he highlighted the requirement that the data underlying those calculations must be "sufficiently current" (Actuarial Standards of Practice No. 23 § 3.2 [b] [1]).
The record on appeal includes two separate actuarial certifications — in redacted form and, under seal, in unredacted form — pertaining to the freeze period. The first, dated June 21, 2018, certified the rates effective during the 2018-2019 fiscal year (hereinafter the June 2018 certification). The second, a letter dated September 2, 2020, certified the same time period (hereinafter the September 2020 certification). Although the June 2018 certification purports to include an exhibit that sets out the "actuarially sound rate ranges," no such exhibit was attached. The September 2020 certification likewise fails to include the rates that it purports to certify. Notably, DOH must accompany the certification with the base data underlying its rate-setting process when seeking approval from the Center for Medicaid & Medicare Services (see 42 CFR 438.7 [b] [1]).
Having reviewed the parties' submissions, material questions of fact remain. As Falikson noted, risk scores and capitation rates must be developed using "generally accepted actuarial principles and practices" (42 CFR 438.5 [g]; see generally Actuarial Standards of Practice Nos. 23, 45, 49). Neither of the certifications [*6]proffered by DOH provide the rates that they purport to certify, and nothing in the record even addresses the certification of the risk scores and capitation rates used from April 2019 through June 2019, the last three months of the freeze (cf. Matter of Higgins v La Paglia, 281 AD2d 679, 680-681 [3d Dept 2001], appeal dismissed 96 NY2d 854 [2001]). Although Carmody asserted that he obtained actuarial approval prior to instituting the freeze and reverting to the prior risk scores, the record is devoid of such approval. Indeed, although the September 2020 certification purportedly certifies the prior risk scores, that document makes no mention of the risk score freeze or of the reversion to the prior risk score; rather, the September 2020 certification simply refers to its approval of "revised rate ranges." These failures are particularly concerning, as it is unclear from the record on appeal whether the rate-setting methodology that DOH deemed so troublesome in November 2018 was the same methodology that was used to calculate the reverted-to risk scores that DOH used for the duration of the freeze. As a result of these deficiencies, we are unable to determine whether DOH's institution of a risk score freeze, its reversion to the prior risk score and its refusal to retroactively correct said score were arbitrary and capricious, and we must remit this matter to allow for these questions of fact to be decided after a hearing (see CPLR 7804 [h]; Matter of Kitto v City of Albany, N.Y. Dept. of Police, 213 AD3d 1165, 1171 [3d Dept 2023]; Matter of Puig v New York State Police, 212 AD3d 1025, 1027 [3d Dept 2023]; Matter of Richmond Children's Ctr., Inc. v Delaney, 190 AD3d 1129, 1131 [3d Dept 2021]; Matter of Lakeshore Nursing Home v Axelrod, 181 AD2d at 340).
Turning to the fourth cause of action sounding in mandamus to compel, we note that petitioner has failed to point to any statute imposing a specific duty upon DOH regarding its imposition of a risk score freeze, its decision to revert to the prior risk scores during the freeze, its refusal to retroactively correct petitioner's risk score for the freeze period or its refusal to correct petitioner's NHT add-on rate for the 2017-2018 fiscal year. Regardless, mandamus to compel was not available here, as all of the determinations at issue "involve the exercise of reasoned judgment which could typically produce different acceptable results," rather than the performance of purely ministerial acts (Alliance to End Chickens as Kaporos v New York City Police Dept., 32 NY3d 1091, 1093 [2018] [internal quotation marks, brackets and citations omitted], cert denied ___ US ___, 139 S Ct 2651 [2019]; see CPLR 7803 [1]; Matter of New York City Yacht Club v New York City Dept. of Bldgs., 172 AD3d 606, 606 [1st Dept 2019], lv denied 33 NY3d 914 [2019]). Consequently, petitioner's fourth cause of action was properly dismissed.
As to petitioner's fifth cause of action sounding in breach of contract, we find that [*7]Supreme Court erred in finding that it lacked subject matter jurisdiction. While true that, "where a party seeks only money damages against the State, the proper forum for such an action is the Court of Claims" (Matter of Gross v Perales, 72 NY2d 231, 235 [1988]), a petitioner in a CPLR article 78 proceeding may be granted monetary damages where such damages are "incidental to the primary relief sought" (CPLR 7806). Regardless of how petitioner styled the claim, its challenge first focused on allegedly arbitrary and capricious determinations by DOH, "and the award of monetary relief, if any, would be incidental to such claim" (Matter of Shore Winds, LLC v Zucker, 179 AD3d 1208, 1210 [3d Dept 2020], lv denied 35 NY3d 914 [2020]; see Matter of Gross v Perales, 72 NY2d at 236). For the reasons previously stated, we affirm the dismissal of the portion of the fifth cause of action that relates to DOH's refusal to retroactively correct petitioner's NHT add-on rate for the 2017-2018 fiscal year but reverse and remit the portion that pertains to DOH's imposition of the risk score freeze, its reversion to the prior risk scores and its refusal to retroactively correct said scores for consideration alongside the corresponding portion of the third cause of action.
Lastly, we do not address the merits of petitioner's argument that Supreme Court erred in denying petitioner discovery, as the denial focused on the summary nature of the proceeding. Further, we note that no formal motion for discovery is contained in this record; rather, in opposing respondents' motion for summary judgment, petitioner argued that the motion was premature because discovery had not yet been conducted. Should petitioner choose to seek discovery pursuant to CPLR 408 upon remittal, the court should exercise its broad discretion to consider, among other things, "whether the party seeking disclosure has established that the requested information is material and necessary, whether the request is carefully tailored to obtain the necessary information and whether undue delay will result from the request" (Matter of Suit-Kote Corp. v Rivera, 137 AD3d 1361, 1365 [3d Dept 2016] [internal citations omitted], appeal dismissed & lv denied 27 NY3d 1054 [2016]; see Matter of Richmond Children's Ctr., Inc. v Delaney, 190 AD3d at 1131; Matter of Alexander M. v Cleary, 188 AD3d 1471, 1474 [3d Dept 2020]). Petitioner's remaining contentions, to the extent not expressly addressed herein, have been examined and found to lack merit.
Garry, P.J., Egan Jr., Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the judgment is modified, on the law, by reversing so much thereof as dismissed the portions of petitioner's third and fifth causes of action pertaining to the risk score freeze, the reversion to the prior risk score and respondent Department of Health's refusal to retroactively correct said score; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's [*8]decision; and, as so modified, affirmed.

Footnotes

Footnote 1: Although not at issue in these proceedings, the parties acknowledge that DOH used the corrected data to calculate petitioner's NHT rates for the 2018-2019 fiscal year and beyond.