Matter of Richmond Children's Ctr., Inc. v Delaney (2024 NY Slip Op 06406)

Matter of Richmond Children's Ctr., Inc. v Delaney

2024 NY Slip Op 06406

Decided on December 19, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 19, 2024

CV-23-1894 CV-24-0221
[*1]In the Matter of Richmond Children's Center, Inc., Doing Business as Richmond Community Services, Appellant,
v
Kerry A. Delaney, as Acting Commissioner of the Office for People with Developmental Disabilities, et al., Respondents. (And Another Related Proceeding.)

Calendar Date:November 12, 2024

Before:Garry, P.J., Lynch, Reynolds Fitzgerald, Fisher and Powers, JJ.

Abrams Fensterman, LLP, White Plains (Robert A. Spolzino of counsel) and Edward S. Rudofsky, PC, Melville (Edward S. Rudofsky of counsel), for appellant.
Letitia James, Attorney General, Albany (Jonathan D. Hitsous of counsel), for respondents.

Reynolds Fitzgerald, J.
Appeal from a judgment of the Supreme Court (Roger D. McDonough, J.), entered July 13, 2023 in Albany County, which dismissed petitioner's applications, in two proceedings pursuant to CPLR article 78, to review respondents' determinations calculating petitioner's Medicaid reimbursement rate for the 2017-2018 and 2020-2021 fiscal years.
Petitioner is a licensed operator of 19 intermediate care facilities, individual residential alternatives and day habilitation programs located in Westchester County. These facilities provide services to individuals with developmental disabilities, including some individuals with serious medical conditions. Petitioner is reimbursed for its services through the Medicaid program, and respondents Department of Health (hereinafter DOH) and Office for People with Developmental Disabilities, have the responsibility to calculate and certify the Medicaid reimbursement rates based on petitioner's operating, facility and capital costs components computed on the basis of 12-month consolidated fiscal reports for the prior year (see 10 NYCRR 86-10.3, 86-11.3). Respondents' regulations provide, among other things, that there shall be one provider-wide rate for each provider of residential habilitation services and one provider-wide rate for each provider of daily habilitation services and, in calculating and adjusting petitioner's reimbursement rates, respondents apply various factors, including a wage equalization factor, an acuity factor and a budget neutrality factor (see 10 NYCRR 86-10.3, 86-11.3).
Petitioner commenced the first of its CPLR article 78 proceedings against respondents to challenge the rate determination for the 2017-2018 fiscal year as arbitrary, capricious and an abuse of discretion, asserting that their reimbursement calculation illegally underfunded petitioner. Respondents submitted an answer and petitioner subsequently filed a motion seeking discovery. Supreme Court (Ceresia, J.) denied the motion and dismissed the petition. On appeal, this Court reversed, finding that respondents failed to provide an adequate record to allow meaningful judicial review as the documents failed to contain "calculations or back-up data that would allow Supreme Court or this Court to review and verify the accuracy of respondents' summary figures and conclusions" and "that absent disclosure of the actual formulas and data used by respondents . . . a determination [could not be] made as to whether respondents' legal obligation to fund petitioner's programs was satisfied" (190 AD3d 1129, 1131 [3d Dept 2021]).
Petitioner commenced a second proceeding challenging respondents' calculation of its reimbursement rate for the 2020-2021 fiscal year as arbitrary, capricious and an abuse of discretion. Respondents answered and filed their purported administrative record. Petitioner once again filed a motion seeking discovery, specifically seeking the "formulae, regressions, and data necessary to determine whether the respondents' determination [*2]had a rational basis or whether it was arbitrary and capricious." Respondents opposed the motion arguing that the record "contains all of the actual formulas and data referenced by" this Court and that "[t]he only omission is the actual [a]cuity [f]actor regression formula, which is proprietary to DOH['s] consultant Optumas, and is not in the possession of either of the [r]espondents" (internal quotation marks omitted). Supreme Court (McDonough, J.) denied petitioner's discovery motion, finding that petitioner failed to demonstrate a need for additional discovery. In accordance with the parties' stipulated briefing schedule, respondents submitted an answer, petitioner submitted a reply wherein they expanded upon their initial petition and respondents submitted a surreply. As part of their surreply, respondents requested that Supreme Court not consider petitioner's expanded arguments as they argued that these were improperly raised for the first time in its reply. Supreme Court agreed that petitioner improperly raised several new arguments in reply and did not address these in its decision. The court then determined that respondents' rate methodologies were supported by substantial evidence and dismissed both petitions. Petitioner appeals, and we reverse.
"In a CPLR article 78 proceeding to review a determination of an administrative agency, the standard of judicial review is whether the determination was made in violation of lawful procedure, was affected by an error of law, or was arbitrary and capricious or an abuse of discretion" (Matter of Concourse Rehabilitation & Nursing Ctr., Inc. v Zucker, 217 AD3d 1189, 1190 [3d Dept 2023] [internal quotation marks and citations omitted]; see Matter of Evercare Choice, Inc. v Zucker, 218 AD3d 882, 885 [3d Dept 2023]). "An agency's action is arbitrary and capricious when it is taken without sound basis in reason or regard to the facts" (Matter of Hudson Health Extracts, LLC v Zucker, 206 AD3d 1515, 1517 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see Matter of John E. Andrus Mem., Inc. v Commissioner of Health of the N.Y. State Dept. of Health, 225 AD3d 959, 961 [3d Dept 2024]). "DOH's rate-setting action may be declared null and void upon a compelling showing that the calculations from which it is derived are unreasonable" (New York State Assn. of Counties v Axelrod, 78 NY2d 158, 166-167 [1991] [internal quotation marks, brackets and citations omitted]). Federal law mandates that a state plan for medical assistance provide that the "rates, the methodologies underlying the establishment of such rates, and justifications for such . . . rates [be] published" (42 USC § 1396a [a] [13] [A] [iii]).
Initially, we disagree with Supreme Court's finding that "the overwhelming bulk of petitioner's arguments in [its] supplemental reply were improperly raised therein for the first time." The essence of petitioner's argument is that respondents' methodology in determining reimbursement [*3]rates is arbitrary and capricious, and it is this same argument, albeit articulated in greater detail, that petitioner realleges in its reply.
Specifically, petitioner contends that the acuity factor utilized by respondents in calculating its rate determination is not transparent or verifiable, and that respondents' refusal to disclose the data necessary to identify the factors in the regression analysis render the rate determination arbitrary and capricious. We agree. To justify the validity of the rate-setting methodology itself and its application to petitioner, respondents submitted the affidavits of DOH's Director of the Bureau of Mental Hygiene Services Rate Setting, DOH's Chief Health Care Fiscal Analyst for the Office of Health Insurance Programs and the Deputy Commissioner of the Division of Enterprise Solutions for the Office for People with Developmental Disabilities. Of these, the only individual to directly address the acuity factor was the Director of the Bureau of Mental Hygiene Services Rate Setting, and, while she described to some extent how it was developed, she failed to set forth with specificity what other variables were utilized and how they were applied. The simple and uncontroverted reason for this lack of specificity, as acknowledged by respondents, is that the regression analysis itself is the result of a proprietary methodology owned by an outside consultant paid by respondents to prepare same. Respondents do not possess the formula, nor have knowledge of the various factors utilized in the analysis, nor obviously have they examined these variables in any effort to determine whether they directly impact petitioner. The statutes demand empirical data in order to confirm the mathematical validity of the formula produced by the regression analysis in determining these rates, not simply blind reliance on an unknowable formula (see Valley View Manor Nursing Home v De Buono, 1997 WL 855508 *14-15, 1997 US Dist LEXIS 24245 [WD NY, Feb. 12, 1997, Nos. 89-CV-0706T, 89-CV-0744T, Telesca, J.]; Matter of Morningside House Nursing Home Co. v Commissioner of N.Y. State Dept. of Health, 206 AD2d 617, 619 [3d Dept 1994]; Matter of Lakeshore Nursing Home v Axelrod, 181 AD2d 333, 339-340 [3d Dept 1992]).
Moreover, respondents' wholehearted reliance on the consultant's regression analysis, without confirmation of empirical data supporting the analysis, is inconsistent with the statutory scheme pertaining to state and federal statutes which require that the methodologies underlying the establishment of the rates and the justification for the rates be provided to petitioner (see 42 USC § 1396a [a] [13] [A]; Public Health Law § 2807 [3]). This Court previously ordered that the formulas used to prepare said rates be turned over to petitioner (190 AD3d at 1131). In essence, respondents' assertion devolves to "we can't give what we don't have and this is proprietary so we can't get it and will never have it." This is inadequate in light of their [*4]statutory duty of transparency. Accordingly, we conclude that the regression analysis employed in the calculation of petitioner's 2017-2018 and 2020-2021 reimbursement rates is arbitrary, capricious and irrational and petitioner is entitled to have the rates recomputed (see Matter of Society of N.Y. Hosp. v Axelrod, 70 NY2d 467, 473-474 [1987]; Matter of Eger Health Care Ctr. v McBarnette, 195 AD2d 730, 731 [3d Dept 1993]).
Garry, P.J., Lynch, Fisher and Powers, JJ., concur.
ORDERED that the judgment is reversed, on the law, without costs, determinations annulled and petitions granted to the extent that respondents are directed to recalculate petitioner's 2017-2018 and 2020-2021 reimbursement rates with appropriate explanation of the factors considered.